**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., State Bar No. 227896
sk@consumerlitigationlawcenter.com
Jeffrey J. Ogorek, Esq. State Bar No. 285927
jjo@consumerlitigationlawcenter.com
100 North Citrus Ave., Suite 408
West Covina, California 91791
Phone: (800) 787-5616 || Fax: (888) 909-7947

Attorneys for Plaintiff ROBERT HEINTZE

CONSUMER LITIGATION LAW CENTER, APC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEINTZE, an individual, | Case No.: 2:15-cv-01238-MMM-MAN |
| Plaintiff, | **Plaintiff's Verified First Amended Complaint For:** |
| v. | |
| WELLS FARGO BANK, N.A., successor in interest to WACHOVIA MORTGAGE, FSB, successor in interest to WORLD SAVINGS BANK, FSB; RTS PACIFIC, INC., a Washington Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive, | 1. **Wrongful Foreclosure (Cal. *Civ. Code* § 2923.6)**<br>2. **Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2923.5)**<br>3. **Fraud**<br>4. **Violation of Fair Debt Collection Practices Act (15 U.S.C. § 1692(e))**<br>5. **Violation of Truth in Lending Act (12 C.F.R. § 1026.36(c))**<br>6. **Violation of Cal. *Bus. & Prof. Code* §§ 17200, et seq. in Loan Servicing**<br>7. **Negligence** |
| Defendants. | 8. **Quiet Title**<br>9. **Declaratory Relief** |
| | **Demand For Jury Trial** |

NOW COMES the Plaintiff ROBERT HEINTZE ("Plaintiff"), complaining of the Defendants, and each of them, for the following:

## I.

## INTRODUCTION

1.     This is an action filed for misconduct related to Defendants' wrongful acts and omissions during the loan servicing and foreclosure process on Plaintiff's home mortgage loan secured by deed of trust.

2.     As described below, Defendants' misconduct resulted in premature and unauthorized foreclosure proceedings, failure to honor a loan modification that Defendants offered to Plaintiff, and an improper and illegal refusal to postpone a trustee's sale date now set on the real property that is also the subject of this litigation.  Each of the allegations regarding Defendants contained herein applies to instances in which one or more, and in some cases all, of the Defendants engaged in the conduct alleged herein.

## II.

## THE PARTIES

3.     Plaintiff ROBERT HEINTZE ("Plaintiff") is, and at all times herein mentioned was, a resident of the State of California, County of Santa Barbara. Plaintiff, at all times relevant to this Complaint, was the owner of his primary residence commonly known as ("Subject Property").[1]

---

[1]  Legal Description: LOT 52 OF TRACT NO. 10029, UNIT NO. THREE, IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN  BOOK 53 PAGES 48 AND 49 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500 FEET OF THE SURFACE OF SAID PROPERTY, WITH NO RIGHT OF ENTRY WITHIN SAID FIRST 500 FEET NOR TO THE SURFACE THEREOF, AS RESERVED IN DEED FROM NELSON W. WILLARD, A WIDOWER, RECORDED FEBRUARY 16, 1960 AS INSTRUMENT NO. 4979 IN BOOK 166 OF OFFICIAL RECORDS.

CONSUMER LITIGATION LAW CENTER, APC

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

4. WELLS FARGO BANK, N.A., successor in interest to WACHOVIA MORTGAGE, FSB, successor in interest to WORLD SAVINGS BANK, FSB ("Wells Fargo"), was is a National Association doing business in the state of California as a residential home loan servicer and is the current servicer and lender under the terms of Plaintiff's note and deed of trust.  A true and correct mortgage payoff statement dated November 17, 2014 identifying Wells Fargo as Plaintiff's lender and servicer is attached hereto as Exhibit "A".

5. RTS PACIFIC, INC., a Washington Corporation ("RTS"), was and is a Washington Corporation and the current trustee of record under Plaintiff's deed of trust.  A true and correct copy of a notice of trustee's sale recorded on October 8, 2014 ("NTS") by RTS is attached hereto as Exhibit "B".

6. Plaintiff is informed, believes, and thereon alleges that at all times material hereto, all Defendants operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiff, from the California public, and from regulators, either directly or as successors-in-interest or affiliates of other Defendants.  The concealment was completed, ratified and/or confirmed by each Defendant herein, directly or as successor, agent, assignee or affiliate to another Defendant.  Each Defendant was a perpetrator of the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants, or was a successor-in-interest to a Defendant that did the foregoing.

7. The Defendants that knowingly participated in the scheme are jointly and severally liable for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants.

8. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25 inclusive ("Does") and, therefore, sue these

APN: 065-204-04

CONSUMER LITIGATION LAW CENTER, APC

3

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

Defendants by such fictitious names.  Plaintiff will amend their Complaint to allege these Defendants true names and capacities when ascertained.  Plaintiffs are informed,  believe, and thereon  allege that each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiffs alleged herein and that such injuries were proximately caused by such Defendants.

**III.**

**<u>TENDER IS NOT REQUIRED</u>**

9.    Tender of the full outstanding debt is not required. There is no bright-line rule requiring tender of the unpaid debt to set aside a sale.  *Storm v. America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.  ". . . [T]ender is a "matter of discretion left up to the Court." *Id.* at *6.  Even if tender were expressly required anywhere, there is no requirement that tender be pled because "at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 547.)  Further, requiring Plaintiffs to allege tender would affirm the underlying debt and invalidate Plaintiff's claims.  See *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424.  Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt.  In addition, the general equitable exception to the tender rule should be applied as such a requirement would evidence injustice and a hardship. *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

10.    As explained further below, Plaintiff is alleging that the outstanding debt is the product of unfair and deceptive business practices with respect to foreclosure under the Loan Agreement, and is therefore disputing the debt and need not tender or allege tender at this stage of litigation.

**IV.**

**<u>JURISDICTION AND VENUE</u>**

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

11.    This Court has personal jurisdiction over this matter pursuant to the California Constitution, Article XI, Section 10 and California *Code of Civil Procedure* section 410.10 because Defendants transacted business in this District and committed the acts complained of herein in California.

12.    Venue is proper in this District pursuant to California *Code of Civil Procedure* section 395.5 because Defendants entered into the underlying contract with Plaintiff in the above-referenced jurisdiction and the payment obligations are to be performed in the above-referenced District.

**V.**

**FACTUAL ALLEGATIONS**

13.    On or about March 23, 2007, Plaintiff executed a note secured by a deed of trust to finance the purchase of the Subject Property that was then recorded on March 29, 2007 ("Loan Agreement").  A true and correct copy of the Adjustable Rate Mortgage Note Pick-A-Payment Loan is attached hereto as Exhibit "C".  A true and correct copy of the deed of trust is attached hereto as Exhibit "D".

14.    Plaintiff initially asked for, and Wells Fargo, through its predecessor World Savings Bank, FSB ("World Savings") told Plaintiff that he would receive a loan with a 30-year fixed interest rate.  However, at signing, the Loan Agreement was not at all explained to Plaintiff.  Plaintiff signed in the presence of a notary and an escrow officer who rushed Plaintiff to sign the documents and never explained to Plaintiff that the loan was not in fact the type of loan that he asked for.  Plaintiff, trusting in the experience of World Savings' agents, thus had no reason to suspect that the loan was anything other than the 30-year fixed interest rate loan that he requested and, due to his lack of relative real estate finance sophistication as compared to World Savings, could not have ascertained the true meaning, effect, and operation of the Loan Agreement's terms.

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

15.     Wells Fargo's predecessor in interest to the Loan Agreement, World Savings, never explained to Plaintiff and, as mentioned above, Plaintiff could never have realized at the time he executed the Loan Agreement that the note actually contained an adjustable interest rate that provided for negative amortization that would quickly cause the monthly payments to skyrocket when the loan balance grew to 125% of the original loan amount.

16.     Moreover, the initial interest rate of 7.580% was essentially a teaser rate because the Loan Agreement's note was dated March 23, 2007, but the interest rate was set to adjust on May 1, 2007 and the first payment date was also May 1, 2007.  Thus the initial interest rate disclosed on the note was, in practical effect, not even the true interest rate that Plaintiff would pay.   Plaintiff is informed, believes, and thereon alleges that the true starting interest rate was in fact higher than the stated rate at 7.76%.

17.     Plaintiff's initial monthly payments required under the note were not even sufficient to make interest-only payments each month.  Thus, the principal balance of the note started to grow immediately due to negative amortization, due to the complexity of the terms of the note and the fact that the impact of the terms of the note were not clear on its face.  Plaintiff did not know nor could he have known that the loan terms were different than what he had asked for and were instead completely unaffordable.

18.     Plaintiff did not realize that the Loan Agreement was not a fixed interest rate loan until he received a copy of the NOD in August 2012 and noticed that the past due amount on the Loan Agreement was $80,908.50.  Only at this time did Plaintiff realize that the combination of the adjustable interest rate, payments below even full interest each month, and principal balance cap, were causing the loan balance to increase beyond levels that he would have expected based on the fixed interest rate loan that Wells Fargo—through its predecessors in

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

interest—led Plaintiff to believe he had actually received at the time of loan origination.

19.     Before 2013, Plaintiff applied for a loan modification six times and each time submitted all documents that Wells Fargo requested in furtherance of the loan modification review.  At times he was purportedly denied for a loan modification because his monthly income was too high, while other times he was denied because his monthly income was too low—even though his income was the same both times.

20.     The first time Plaintiff applied for a loan modification he was receiving rental income from a tenant at the Subject Property, but Wells Fargo's employees told Plaintiff not to submit his rental income with his loan modification application, but thereafter denied Plaintiff's loan modification application due to insufficient monthly income.

21.     The second time Plaintiff applied for a loan modification application, he included the rental income from his tenant at the Subject Property, but this time Wells Fargo denied Plaintiff's loan modification application as being purportedly too high to receive a loan modification.

22.     When Plaintiff was about $17,000 past due on the Loan Agreement, he obtained an exact re-instatement quote from Wells Fargo and withdrew money from his 401(k) retirement account to reinstate the Loan Agreement.  After withdrawing the exact reinstatement funds from his 401(k) and offering the funds to Wells Fargo to reinstate the loan, Wells Fargo then told Plaintiff that he could not pay the reinstatement and that Wells Fargo would not take his payment because Wells Fargo's own reinstatement quote was incorrect.

23.     As a result of Wells Fargo giving Plaintiff an incorrect re-instatement quote and causing Plaintiff to withdraw funds from his 401(k) account, Plaintiff had to pay increased income taxes for the 401(k) withdrawal that he would not have paid had Wells Fargo not encouraged Plaintiff to withdraw the funds only to

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

refuse to accept the payment because the prior reinstatement quote was purportedly incorrect.

24.    Moreover, had Wells Fargo given Plaintiff a correct reinstatement quote, Plaintiff would have been able to bring the loan current, would no longer be in default, would not have accumulated additional penalties and fees, and would not now be facing a foreclosure sale.

25.    In the meantime, Wells Fargo, through RTS, recorded the NOD on the Subject Property on August 16, 2012.

26.    Wells Fargo, through RTS, then recorded a notice of trustee's sale on the Subject Property on November 19, 2012 ("2012 NTS").  A true and correct copy of the 2012 NTS is attached hereto as Exhibit "E".

27.    Wells Fargo, through RTS, then recorded a second notice of trustee's sale on the Subject Property on March 12, 2014.  A true and correct copy of the 2014 NTS is attached hereto as Exhibit "F".

28.    Plaintiff is informed, believes, and thereon alleges that prior to recording the NOD on the Subject Property, Wells Fargo never initiated contact with Plaintiff in person or by phone to discuss any options to avoid foreclosure, never scheduled a subsequent meeting with Plaintiff, never provided Plaintiff with HUD's telephone number, never provided the telephone number to locate a HUD-certified counseling agency, never provided Plaintiff with the means to contact a live representative of Defendants during normal business hours, and never posted a link on its website to information outlining loss mitigation options.

29.    Once Plaintiff contacted Wells Fargo to discuss loss mitigation, Wells Fargo's purported "single point of contact" failed to timely contact Plaintiff, Wells Fargo constantly gave Plaintiff false or inconsistent status updates regarding his loan modification applications, gave Plaintiff false reinstatement figures, and tried to deter Plaintiff from submitting proof of rental income.  Rather, Plaintiff initiated all contact with Wells Fargo representatives who repeatedly asked for the

CONSUMER LITIGATION LAW CENTER, APC

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

same information from Plaintiff over and over again, only to deny Plaintiff a loan modification based on a complete miscalculation of Plaintiff's income.

30.     Plaintiff is informed, believes, and thereon alleges that Wells Fargo failed to satisfy the contact and notice requirements of California *Civil Code* section 2923.5 in that Wells Fargo and RTS failed to contact Plaintiff to discuss options to avoid foreclosure, failed to set up a follow up appointment with Plaintiff, failed to provide Plaintiff with HUD's telephone number to find a certified counseling agency, failed to mail a letter to Plaintiff with said phone number, failed to call Plaintiff at three times on three different days, and failed to send a certified letter to Plaintiff with return receipt requested.

31.     Thus, Wells Fargo and RTS did not fulfill the substantive obligations imposed upon them, as lenders and trustees, by the California legislature before recording the NOD and subsequent notices of trustee's sales.

32.     No NOD should have been recorded prior to a good faith effort being made by Defendants to contact Plaintiff and explore alternatives to foreclosure under *Civil Code* section 2923.5.

33.     Plaintiff submitted a complete first lien loan modification application again on October 23, 2014.  However, Plaintiff received two denial letters dated November 6, 2014.  True and correct copies of the denial letters are attached hereto as Exhibit "G".

34.     In response, Plaintiff, through his counsel of record herein, sent Wells Fargo an appeal letter dated December 3, 2014 explaining that Wells Fargo's loan modification denial was in error and explaining the means by which Wells Fargo could create a loan modification for Plaintiff within the guidelines of the Home Affordable Modification Program ("HAMP") and Wells Fargo's MAP2R program guidelines.  A true and correct copy of the appeal letter is attached hereto as Exhibit "H".

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

35.   A trustee's sale date was set for January 15, 2015 at 1:00 p.m., and then postponed to 1) January 29, 2015; 2) February 10, 2015; 3) March 20, 2015; and ultimately to 4) April 2, 2015.

36.   The trustee's sale is currently set for April 2, 2015 at 1:00 p.m. Defendants have continuously postponed the date despite the fact that Plaintiff is still awaiting a decision on his appeal of his loan modification denial, causing him to incur needless attorney's fees and costs.

## FIRST CAUSE OF ACTION
## WRONGFUL FORECLOSURE
### (Cal. *Civ. Code* § 2923.6)
### (Against Wells Fargo, RTS, and Does 1–25)

37.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

38.   Plaintiff submitted a complete first lien loan modification application to Wells Fargo on October 23, 2014.

39.   Wells Fargo denied Plaintiffs' loan modification in two letters, both dated November 6, 2014, that are attached hereto as Exhibit "G".

40.   Plaintiff timely appealed the loan modification application denial on account of a material change in his financial circumstances not previously considered by Wells Fargo through a letter dated December 3, 2014.  A true and correct copy of the December 3, 2014 letter is attached hereto as Exhibit "H".

41.   To date, Plaintiff has not received a written decision on his loan modification denial appeal dated December 3, 2014.

42.   Nonetheless, Wells Fargo and RTS refuse to postpone a trustee's sale date currently scheduled for April 2, 2015 at 1:00 p.m. despite that Plaintiff timely appealed the denial of his first lien loan modification application and has not received a denial of the appeal, let alone has 15 days passed since the denial of his appeal. Moreover, Wells Fargo continues to schedule prospective trustee's sales

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

despite Plaintiff's not having received a denial of the appeal or the expiration of 15 days after the denial of said appeal.

43. Under *Civil Code* section 2923.6(e), "If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of . . . 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer." Cal. *Civ. Code* § 2923.6(e)(2).

44. Under *Civil Code* section 2924.12(a)(1), "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section . . . 2923.6 . . . ."

45. Plaintiff is therefore entitled to injunctive relief preventing Defendants from conducting the April 2, 2015 trustee's sale because his loan modification appeal is still pending, to recover his attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION

### FAILURE TO ENGAGE IN LOSS MITIGATION

### (Cal. *Civ. Code* § 2923. 5)

### (Against Wells Fargo, RTS, and Does 1–25)

46. Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

47.    A mortgage servicer, mortgagee, beneficiary, or authorized agent may not record a notice of default until thirty days after contacting the borrower to discuss loss mitigation options, including advising the borrower of her right to request a subsequent meeting, conducting the subsequent meeting within fourteen days of the request, and providing the borrower with a toll-free number to contact a United States Department of Housing and Urban Development ("HUD") certified counseling agency. Cal. *Civ. Code* § 2923.5(b)(2).

48.    If unable to contact the borrower to discuss the loss mitigation options mentioned above, alternatively, the loan servicer must satisfy various due diligence requirements by providing contact information for a HUD-certified counseling agency, following up by phone three times at different hours and on different days, and following up two weeks later with a certified letter, return receipt requested that also contains the contact information for a HUD-certified counseling agency. Cal. *Civ. Code* § 2923.5(f)(1)–(3). The servicer must also provide a means for the borrower to contact a live representative of the servicer by phone, must post a link on its website with options to avoid foreclosure, must provide a toll-free phone number on its website that the borrower can call to discuss options to avoid foreclosure, and provide a phone number for a HUD-certified housing counseling agency on its website. Cal. *Civ. Code* § 2923.5(f)(4)–(5).

49.    In addition, the servicer may only conduct a trustee's sale after providing the borrower with a statement that the borrower may request counseling at particular agencies if the borrower is a service member or dependent thereof, and after providing the borrower a statement that the borrower may request certain documents related to the borrower's note, deed of trust, and payment history. Cal. *Civ. Code* § 2923.5(b)(1).

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

50.     Plaintiff is informed, believes, and thereon alleges that he never received a written statement regarding counseling and options to avoid foreclosures for service members or their dependents from Wells Fargo.

51.     Plaintiff is informed, believes, and thereon alleges that he never received a written statement that she could request documents related to her loan, deed of trust, and payment history from Wells Fargo. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(1)–(3).

52.     Plaintiff is informed, believes, and thereon alleges that Wells Fargo never contacted him by phone to discuss options to avoid foreclosure and never informed him of his right to request any subsequent meeting. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(1)–(3).

53.     Plaintiff is informed, believes, and thereon alleges that he never received from Wells Fargo a letter with a phone number to contact a HUD-certified counseling agency. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(1)–(3).

54.     Plaintiff is informed, believes, and thereon alleges that he never received any follow up phone call from Wells Fargo—let alone on three different days. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(1)–(3).

55.     Plaintiff is informed, believes, and thereon alleges that he never received a letter via certified mail, return receipt requested, with a phone number to find a HUD-certified counseling agency. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(1)–(3).

56.     Plaintiff is informed, believes, and thereon alleges that he was unable to ever locate on Wells Fargo's website a link with information for options to avoid foreclosure, nor was he able to locate a phone number on the website to discuss options to avoid foreclosure, nor was she able to locate a phone number on

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

the website to find a HUD-certified housing counseling agency. Such conduct constitutes a material violation of Cal. *Civ. Code* § 2923.5(f)(4)–(5).

57.    Plaintiff is therefore entitled to injunctive relief under *Civil Code* section 2924.12 preventing Defendants from conducting the April 2, 2015, trustee's sale or any other trustee's sale scheduled while Plaintiff's appeal of his denial of loan modification is pending or upon the expiration of 15 days of receiving a denial of said appeal,  to recover his attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

**THIRD CAUSE OF ACTION**

**FRAUD**

**(Against Wells Fargo, RTS, and Does 1–25)**

58.    Plaintiff hereby realleges and incorporates all preceding paragraphs as though fully set forth herein.

59.    Wells Fargo, through its employees, represented to Plaintiff that his income was too low to qualify for a loan modification and, therefore, denied Plaintiff a loan modification on this basis.

60.    Wells Fargo's representation that Plaintiff's income was too low to qualify for a modification was blatantly false because Wells Fargo later denied Plaintiff for a loan modification stating Plaintiff had too much income when Plaintiff applied with additional income.  Moreover, the representation was further false because Wells Fargo knew that Plaintiff had additional income but discouraged Plaintiff from submitting a loan modification application with his additional rental income.

61.    Defendants knew their representation that Plaintiff did not qualify for a loan modification due to insufficient income was false because Wells Fargo

14
**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

knew Plaintiff had additional rental income but Plaintiff is informed, believes, and thereon alleges that Wells Fargo discouraged Plaintiff from applying for a loan modification with his full income so that Wells Fargo could generate false grounds to deny Plaintiff's loan modification application.

62.    Wells Fargo intended for Plaintiff to rely on the representation that his income was too low for a loan modification because Plaintiff is informed, believes, and thereon alleges that Wells Fargo intends to foreclose on the Subject Property rather than review Plaintiff for a loan modification in good faith.

63.    Plaintiff reasonably relied on Wells Fargo's representation that he did not qualify for a loan modification due to insufficient income and that he should not submit rental income because he continued to work towards a loan modification on the assumption that Wells Fargo would continue to review Plaintiff in good faith.

64.    Wells Fargo also represented to Plaintiff that he could reinstate the loan when he was approximately $17,000 behind on his monthly payments and provided a purportedly exact reinstatement figure to Plaintiff.

65.    Wells Fargo's statement was in fact false because when Plaintiff used funds from his 401(k) to reinstate the loan in the exact amount that Wells Fargo provided to Plaintiff to reinstate his loan.   When Plaintiff tendered the reinstatement amount to Wells Fargo, Wells Fargo refused to accept any funds because Wells Fargo's prior reinstatement quote was purportedly incorrect.

66.    Plaintiff is informed, believes, and thereon alleges that Wells Fargo knew its reinstatement figure was false because Wells Fargo purportedly has access to records and information that would allow Wells Fargo to give exact reinstatement figures and is also required by law to do so.

67.    Wells Fargo intended for Plaintiff to rely on the false reinstatement quote so that Wells Fargo could then change the reinstatement amount to a higher

1   amount that Plaintiff would then be unable to pay, causing Plaintiff to fall further
2   into default and causing Plaintiff to be unable to bring the loan current.

3         68.    Plaintiff reasonably relied on Wells Fargo's reinstatement figure
4   because lenders are required by law to maintain precise reinstatement figures and
5   past due amounts when servicing home mortgage loans.

6         69.    Wells Fargo also represented to Plaintiff that he did not qualify for a
7   loan modification under HAMP or MAP2R in November 2014.

8         70.    Plaintiff is informed, believes, and thereon alleges that the
9   representation that Plaintiff did not qualify for HAMP or MAP2R was in fact false
10   and that Plaintiff did qualify for a loan modification under both programs as
11   explained in Plaintiff's loan modification denial appeal letter attached hereto as
12   Exhibit "H".

13         71.    Plaintiff is informed, believes, and thereon alleges that Wells Fargo
14   knew its representation that Plaintiff did not qualify for a loan modification was
15   false because Wells Fargo is aware of HAMP and its own MAP2R guidelines.

16         72.    Wells Fargo intended that Plaintiff rely on its representation that
17   Plaintiff did not qualify for a loan modification because Wells Fargo wanted to
18   foreclose on and sell the Subject Property rather than review Plaintiff for a loan
19   modification in good faith.

20         73.    Plaintiff reasonably relied on the representation that he would be
21   reviewed in good faith and that he did not qualify for a loan modification because
22   he is informed, believes, and thereon alleges that Wells Fargo has sufficient
23   knowledge of available modification programs to make an adequate determination
24   of borrower eligibility.

25         74.    Plaintiff was harmed in relying on Wells Fargo's stated reinstatement
26   amount because he withdrew funds from his 401(k) fund and paid extensive taxes
27   as a result, but was ultimately unable to use the funds to reinstate the loan because
28   Wells Fargo's reinstatement figure was incorrect.

*CONSUMER LITIGATION LAW CENTER, APC*

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

75.     Plaintiff was harmed in relying on Wells Fargo's representations that his income was too low to qualify for a loan modification and that he should not include his rental income when applying for a loan modification because he was denied a loan modification based on insufficient income when he would have qualified for a loan modification had he submitted a loan modification application with the rental income.

76.     Plaintiff was also harmed in relying on Wells Fargo's representations that he did not qualify for any loan modification program—namely HAMP and MAP2R—because now Plaintiff is deprived of a loan modification program that he would have qualified for had Wells Fargo reviewed Plaintiff for a loan modification in good faith.

77.     As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered and continues to suffer pecuniary damages due to excessively high mortgage payments, an increasing principal balance, threatened loss of the Subject Property, mounting fees, costs and penalties, lost opportunity to pursue other alternatives to avoid foreclosure, wrongful denial of the Trial Plan, and wrongful denial of a permanent loan modification under HAMP and MAP2R for which Plaintiff was qualified and would have received but for Defendant's acts and omissions alleged herein all in an amount to be proven at time of trial but not less than the jurisdictional minimum of this Court.

78.     Plaintiff is further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct, and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

79.     Plaintiff is therefore entitled to such relief as is set forth in this cause of action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## **FOURTH CAUSE OF ACTION**

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

**VIOLATION OF FAIR DEBT COLLECTIONS PRACTICES ACT**

**(15 U.S.C. § 1692(e))**

**(Against Wells Fargo, RTS, and Does 1–25)**

80.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     Under the Fair Debt Collection Practices Act ("FDCPA"), a debt collector may not engage in the false representation of the "character, amount, or legal status of any debt".  15 U.S.C. § 1692(e)(2)(A).

82.     Wells Fargo provided a false reinstatement amount to Plaintiff, causing Plaintiff to withdraw funds from his 401(k) account and pay taxes thereon, only later to claim that Wells Fargo would not accept a reinstatement for the amount previously quoted.

83.     As a result, Plaintiff not only incurred tax penalties he would not have otherwise incurred but for Wells Fargo's representation, but was unable to reinstate the Loan Agreement because he could not obtain an accurate reinstatement amount.

84.     Plaintiff is therefore entitled to recover actual damages, statutory damages, and attorney's fees and costs under 15 U.S.C. 1692k as a result of Wells Fargo's FDCPA violations.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF TRUTH IN LENDING ACT**

**(12 C.F.R. § 1026.36(c))**

**(Against Wells Fargo, RTS, and Does 1–25)**

85.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

86.     Under the Truth in Lending Act ("TILA") as codified at 12 C.F.R. 1026.36(c), a loan servicer must not fail to credit a payment to a consumer's loan account as of the date of receipt and must not impose a late fee on a consumer in

CONSUMER LITIGATION LAW CENTER, APC

connection with a payment with the payment is a fully payment for the applicable period and is paid on its due date or within any applicable grace period.

87.     Wells Fargo failed to timely apply the reinstatement amount that Plaintiff attempted to pay to Wells Fargo so that Plaintiff was unable to reinstate the Loan Agreement and bring his loan account out of default.

88.     Plaintiff is further informed, believes, and thereon alleges that Wells Fargo imposed improper late fees between when Plaintiff obtained the reinstatement amount from Wells Fargo and when Plaintiff attempted to pay the quoted reinstatement amount so that Plaintiff was then unable to reinstate the loan with the funds that Wells Fargo previously represented would be sufficient to reinstate the loan.

89.     Plaintiff is therefore entitled to recover his actual damages suffered as a result of Wells Fargo's violation of TILA and his attorneys' fees and costs incurred herein, and such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SIXTH CAUSE OF ACTION

### VIOLATION OF *BUS. & PROF. CODE* §§17200, ET SEQ.

### IN LOAN SERVICING

### (Against Wells Fargo, RTS, and Does 1–25)

90.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     California *Business & Professions Code* section 17200, California's Unfair Competition Law ("UCL"), prohibits "any **unlawful**, **unfair** or **fraudulent** business act or practice." Cal. *Bus. & Prof. Code* § 17200 (emphasis added). The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability. *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

92.   **Unlawful:** "The 'unlawful' practices prohibited by section 17200 are **any** practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or **court-made**." *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–39 (emphasis added). These predicate unlawful business acts and practices include, but are not limited to, California *Civil Code* section 1709 (fraud), *Civil Code* section 1710 (negligent misrepresentation), *Civil Code* section 2923.5 (failure to engage in loss mitigation), *Civil Code* section 2923.6 (wrongful foreclosure), *Civil Code* section 1714(a) (negligence), 12 C.F.R. § 1026.36(c) (Truth in Lending Act violation), and 15 U.S.C. § 1692(e) (Fair Debt Collection Practices Act Violation). A violation of any of these underlying laws is a *per se* violation of section 17200.

93.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1709 by intentionally providing Plaintiff a false reinstatement amount, by instructing Plaintiff not to submit rental income with a loan modification application then denying Plaintiff's application for insufficient income, and for wrongfully denying Plaintiff's loan modification application in the letters attached hereto as Exhibit "G" even though Plaintiff was qualified for loan modifications under the HAMP and MAP2R programs.

94.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1710 by providing Plaintiff a false reinstatement amount, by instructing Plaintiff not to submit rental income with a loan modification application then denying Plaintiff's loan modification application for insufficient income, and for denying Plaintiff's loan modification application in the letters attached hereto as Exhibit "G" even though Plaintiff was qualified for loan modifications under the HAMP and MAP2R programs.

95.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 2923.5 by failing to initiate contact with Plaintiff to discuss loss mitigation options to avoid foreclosure at least thirty

(30) days before filing the NOD and by failing to comply with the extensive notice and loss mitigation requirements of *Civil Code s*ection 2923.5 before recording the NOD and two NTS on the Subject Property.

96.    Plaintiff is further informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 2923.6 by refusing to postpone the April 2, 2015 sale date even though Plaintiff is currently under review of an appeal from a loan modification application denial.

97.    Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1714(a) in that Defendants owed a duty of care to Plaintiff as the lenders, servicers, and trustees of the Loan Agreement to process Plaintiff's loan modification applications and reinstatement calculations in a commercially reasonable manner and in good faith, that Defendants' conduct fell below the standard of care that Defendants owed to Plaintiff by failing to correctly determine Plaintiff's eligibility for loan modification programs and by providing Plaintiff an incorrect reinstatement amount, in addition to discouraging Plaintiff from using rental income in a loan modification application and then denying Plaintiff's application for insufficient income.

98.    Defendants further violated 15 U.S.C. section 1692(e) (FDCPA) by falsely representing the status of Plaintiff's debt—specifically the total past due amount that must be paid to bring the loan current.

99.    Defendants further violated 12 C.F.R. section 1026.36(c) (TILA) by failing to timely credit the reinstatement funds that Plaintiff attempted to tender to Wells Fargo so that the reinstatement amount changed and Plaintiff was unable to bring the loan fully current.

100.   **Unfair:** "[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca*

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

*Convalescent Homes Inc.* (1984) 159 Cal.App.3d 509, 530.   Furthermore, the "unfair" standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud.   *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740.   Finally, because section 17200 is disjunctive, practices that may be lawful may nevertheless be unfair.   *Id.*

101.   Defendants, and each of them, engaged in unfair business practices by refusing to assist Plaintiff to avoid foreclosure, failing to provide Plaintiff with an accurate reinstatement figure, repeatedly losing documents and requesting the same documents over and over from Plaintiff, refusing to provide Plaintiff with the HAMP or MAP2R modification for which Plaintiff qualified in every respect and that Plaintiff was only prevented from receiving due to Defendants' wrongful conduct, and by proceeding with the foreclosure process on the Subject Property without authority to do so and despite the fact that Plaintiff is currently in the appeals period for a loan modification denial.

102.   As alleged hereinabove, when Defendants had an opportunity to engage in good faith loss mitigation, they did nothing to relieve Plaintiff, refused to honor and comply with the Trial Plan, and now refuse to postpone a pending trustee's sale even though Defendants' loan modification denial was deficient.

103.   Defendants' purported loss mitigation assistance merely reflects a pattern of deceptive and unfair business practices by failing and refusing to provide Plaintiff with a loan modification pursuant to HAMP or MAP2R for which Plaintiff qualified, and by now attempting to sell the Subject Property without authority to do so due to the pending loan modification denial appeal review.   Defendants' unfair practices include:

      a.    charging excessive or improper fees for default-related services;

      b.    refusing to review Plaintiff for a loan modification in good faith;

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

c.    providing false or misleading information in response to inquiries;

d.    failing to perform proper loan modification underwriting;

e.    failing to gather or losing loan modification application documentation and other paper work;

f.    failing to provide adequate staffing to implement programs;

g.    failing to adequately train staff responsible for loan modifications;

h.    failing to establish adequate processes for loan modifications;

i.    providing false or misleading information to Plaintiff;

j.    providing incorrect loan reinstatement amounts;

k.    initiating foreclosure while Plaintiff was in good faith actively pursuing a loss mitigation alternative offered by Defendants;

l.    discouraging Plaintiff from submitting rental income in furtherance of a loan modification then denying the modification application due to insufficient income;

m.    misleading Plaintiff by representing that loan modification applications would be handled promptly yet failing to act in a timely manner; and

n.    wrongfully proceeding towards a foreclosure sale on the Subject Property during the loan modification appeal review process.

104.    Instead of engaging in good faith loss mitigation assistance as required by law, Defendants have still maintained foreclosure proceedings on the Subject Property and wrongfully refused to review Plaintiff's loan modification applications in good faith.

105.    Plaintiff is informed, believes, and thereon alleges that Defendants failed to seek alternatives to foreclosure and continued with the foreclosure

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

process as part of their company policies to deny contractual and stipulated benefits to borrowers such as Plaintiff and instead foreclose and profit on the collateral value of the Subject Property.  These policies were put into place despite the fact that Defendants are under a duty to offer modification and foreclosure prevention relief in good faith under California law.

106.   Defendants' unfair practices in servicing Plaintiff's loan violate public policy favoring loan modification.  This policy is evidenced by Cal. *Civil Code* sections 2923.5, 2923.6, and HAMP.

107.   **Fraudulent**:  A business practice is fraudulent under *Business and Professions Code* section 17200 if "members of the public are likely to be deceived."  *Committee on Children's Television v. General Foods Corp*. (2002) 35 Cal.3d 197, 211.  Furthermore, even lawful contract terms presented in a deceptive manner are fraudulent under section 17200.  *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.  Such fraudulent practices do not require the plaintiff show actual deception, reliance, or damages.  *Committee on Children's Television v. General Foods Corp*., *supra*, 35 Cal.3d at 211.  Defendants' acts and omissions, as alleged herein, were likely to deceive members of the public and, in fact, did deceive Plaintiff.

108.   Defendants' fraudulent business practices included, but were not limited to:

    a.   refusing to review Plaintiff for loan modification programs in good faith;

    b.   providing false reinstatement figures;

    c.   denying Plaintiff's loan modification application for insufficient income after discouraging Plaintiff from submitting supplemental rental income;

    d.   failing to review Plaintiff for a loan modification in good faith so that Defendants could instead charge excessive interest,

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

penalties and fees, and ultimately foreclose on the Subject Property; and

e. Refusing to postpone the April 2, 2015 trustee's sale as required under *Civil Code* section 2923.6.

109. Defendants' unlawful, unfair, and fraudulent business practices present a continuing threat of deception to both Plaintiff and members of the public at large as alleged herein. Plaintiff and other members of the general public have no other adequate remedy at law that will prevent Defendants' misconduct as alleged herein from occurring, and reoccurring, in the future to both Plaintiff and members of the general public.

110. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices alleged herein, Plaintiff has suffered extensive pecuniary damages as alleged herein as well as threatened loss of the Subject Property.

111. As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered and continues to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs, and loss of all value and equity in the Subject Property, in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

112. Plaintiff is also entitled to enjoin the April 2, 2015 trustee's sale on the Subject Property until this action is resolved.

113. Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

**(Against Wells Fargo, RTS, and Does 1–25)**

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

114.    Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    Once Wells Fargo undertook to review Plaintiff's loan modification applications, Wells Fargo owed Plaintiff a duty of care to review Plaintiff for loss mitigation options in a commercially reasonable manner, including by complying with *Civil Code* sections 2923.6, HAMP, and MAP2R eligibility guidelines.

116.    Wells Fargo breached its duty to Plaintiff by refusing to exercise due care to determine Plaintiff's eligibility for loan modification programs, providing to Plaintiff incorrect reinstatement amounts, and by representing to Plaintiff that he should not submit proof of rental income in furtherance of his loan modification review.

117.    The harm that Plaintiff suffered was reasonably foreseeable to Wells Fargo in that, first Wells Fargo knew Plaintiff was experiencing financial hardship and would lose the Subject Property if he were unable to obtain a loan modification and unable to reinstate the Loan Agreement without an accurate reinstatement amount.

118.    The acts and omissions of Defendants were both the actual and proximate cause of Plaintiff's injury because, but for Defendants' failure to review Plaintiff for loan modification programs in good faith and failure to provide an accurate reinstatement figure, Plaintiff would have received a permanent loan modification or, at the very least, Plaintiff would have been able to reinstate the Loan Agreement and not fall further into default.  Moreover, Plaintiff would not have suffered the extreme emotional distress of facing a trustee's sale at this time because Plaintiff would now be in a permanently modified loan.

119.    Plaintiff is therefore entitled to general and special damages in an amount to be proven at time of trial, but in any event no less than the jurisdictional minimum of this Court.

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

120.    Plaintiff is further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

121.    Plaintiff is finally entitled to such relief as is set forth in this cause of action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION

### QUIET TITLE

### (Cal. *Code Civ. Proc.* § 760.020)

### (Against Wells Fargo, RTS, and All Persons Unknown,
### Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest
### In The Property Described In The Complaint Adverse To Plaintiff's Title
### Or Any Cloud On Plaintiff's Title Thereto, and Does 1–25)

122.    Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123.    Plaintiff is the legal owners of the Subject Property that is commonly known as 364 Magna Vista Street, Santa Barbara, California 93110 ("Subject Property").[2]

---

[2] Legal Description: LOT 52 OF TRACT NO. 10029, UNIT NO. THREE, IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN  BOOK 53 PAGES 48 AND 49 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500 FEET OF THE SURFACE OF SAID PROPERTY, WITH NO RIGHT OF ENTRY WITHIN SAID FIRST 500 FEET NOR TO THE SURFACE THEREOF, AS RESERVED IN DEED FROM NELSON W. WILLARD, A WIDOWER, RECORDED FEBRUARY 16, 1960 AS INSTRUMENT NO. 4979 IN BOOK 166 OF OFFICIAL RECORDS.

APN: 065-204-04

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

124.    Plaintiffs seek to quiet title as of August 16, 2012, the date the first NOD was recorded on the Subject Property.

125.    Plaintiff seeks to quiet title against the claims of all Defendants named in this Complaint and anyone else claiming interest in the Subject Property.  Defendants and any successors or assignees have no right to title or interest in the Subject Property and no right to entertain any such rights of ownership including the right of possession.

126.    Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone as the title owner of the Subject Property, and that Defendants and each of them be declared to have no estate, right, title, or interest in the Subject Property, and that Defendants, their agents, and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property.

127.    As Defendants do not have any legal ownership or interest in the Subject Property on the date of foreclosure and failed to adhere to the strict statutory requirements to effectuate a foreclosure sale of the Subject Property, the foreclosure sale proceedings are void and invalid.  Therefore, Plaintiff still has title to the Subject Property and title should be vested in Plaintiff's name alone.

128.    Tender of the full outstanding debt is not required.  There is no bright-line rule requiring tender of the unpaid debt to set aside a sale.  *Storm* v. *America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.  ". . . [T]ender is a "matter of discretion left up to the Court." *Id.* at *6.  Even if tender were expressly required anywhere, there is no requirement that tender be pled because "at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.*; (quoting *Bell Atl. Corp.* v. *Twombly* (2007) 550 U.S. 544, 547).  Further, requiring Plaintiff to allege tender would affirm the underlying debt and invalidate Plaintiff's claims.  *See Onofrio v. Rice*

CONSUMER LITIGATION LAW CENTER, APC

(1997) 55 Cal. App. 4th 413, 424. Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt. In addition, the general equitable exception to the tender rule should be applied as such a requirement would evidence injustice and a hardship. *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

129. A borrower is also not required to allege tender because it would be a financial bar to most borrower's claims. *Multani v. Witkin & Neal*, 215 Cal.App.4th 1428, 1454–1455 (2013). Tender is also not required where, as here, the borrower is attacking the validity of the foreclosure sale as void. *Pfeifer v. Countrywide Home Loans* (2012) 211 Cal.App.4th 1250, 1280. Finally, tender is also not required where a borrower is attacking the validity of a foreclosure sale **before** it has occurred. *Barrioneuvo v. Chase Bank* (N.D. Cal. 2012) 885 F.Supp.2d 964, 969 (applying California law).

130. Accordingly, the Court should rule that title to the Subject Property be vested in Plaintiff's name alone and award consequential damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Cal. *Code Civ. Proc.* § 1060)

### ((Against Wells Fargo, U.S. Bank, Clear Recon, and Does 1–25)

131. Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

132. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding foreclosure on the Subject Property and the Trial Plan.

133. These disputes concern, but are not limited to, the ownership rights to the Subject Property, the validity of the foreclosure process and trustee's sale, and

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

the rights and obligations of the parties during the loan modification review process.

134.    Plaintiff contends that Defendants do not have authority to foreclose upon and sell the Subject Property because Plaintiff is currently in active loan modification appeal review.

135.    Plaintiff is informed, believes, and thereon alleges that Defendants dispute Plaintiff's position as alleged herein and take the contrary position that they do in fact have the legal right and authority to foreclose on the Subject Property.

136.    As a result of said dispute, Plaintiff requests a judicial determination of the rights, obligations, and interest of the parties as to the Subject Property and such determination is necessary and appropriate at this time, and under these circumstances, so that all parties may ascertain and know their rights, obligations, and interest in the Subject Property.

137.    As a result of Defendants' wrongful foreclosure proceedings and refusal to engage in good faith loan modification review, Plaintiff has sustained great and irreparable injury through threatened loss of the Subject Property. Plaintiff cannot obtain adequate relief from money damages because real property is unique; thus, Plaintiff lacks an adequate remedy at law.

138.    Plaintiffs request a determination of the validity of the trustee's sale set for April 2, 2015, and the validity of the November 6, 2014 loan modification denial letters.

139.    Plaintiffs request a further determination of whether any Defendant has authority to foreclose and to conduct a trustee's sale on the Subject Property.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

CONSUMER LITIGATION LAW CENTER, APC

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

1.  To enjoin the April 2, 2015 trustee's sale of the Subject Property;

2.  To enjoin any and all trustee's sales of the Subject Property pending the outcome of this litigation;

3.  For compensatory damages awarded according to proof;

4.  For special damages according to proof;

5.  For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

6.  For all applicable statutory damages;

7.  For attorney's fees and costs of suit incurred herein;

8.  For pre- and post-judgment interest thereon; and

9.  For such other and further relief as the court deems just and proper.

Dated: March 20, 2015                    CONSUMER LITIGATION LAW CENTER, APC


By:   _/s/ Jeffrey J. Ogorek_____
         September J. Katje, Esq.
         Jeffrey J. Ogorek, Esq.
         Attorneys for Plaintiff
         ROBERT HEINTZE

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

## **VERIFICATION**

I, Robert Heintze, am the Plaintiff in this action. I have read the First Amended Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Santa Barbara, California on March 20, 2015.


_____
Robert Heintze

**PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT**

# EXHIBIT A

**WELLS FARGO HOME MORTGAGE** — **Loan Statement**

The amounts due on this statement may vary daily; prior to sending funds, call us for a reinstatement or payoff quote. This does not change a sale date that may be scheduled.

| Property address: | 364 MAGNA VISTA ST |
| | SANTA BARBARA   CA 93110-1923 |
| Loan number: | 0045504206 |
| Payment due date: | 12/01/14 |
| Statement date: | 11/17/14 |

**Customer Service**
| Telephone: | 1-800-282-3458 |
| Hours of operation: | Monday - Friday 7am - 8pm CST |
| | Saturday 8am - 5pm CST |
| Online: | wellsfargo.com |

M9DLLSDTYV  012429



#CONSUMER LITIGATION LAW
100 N CITRUS ST STE 408
WEST COVINA    CA 91791

## 1. Payment options

Select your option on the payment coupon below. Please see *choosing your payment options* on reverse side for explanation.

**PAYMENT OPTIONS DO NOT APPLY**

## 2. Current payment explanation

| Payment options | |
|---|---|
| Interest due | 1,382.57 |
| Deferred interest+ | 0.00 |
| Principal paid | 1,120.87 |
| Escrow | 494.89 |
| Optional product(s) | 0.00 |
| Current payment | 2,998.33 |
| Total past due | 158,323.49 |
| **Total payment** | **161,321.82** |

| Past due amount | Late charges/ fees due | Total past due | Total outstanding deferred interest+ | Current interest rate (Until January 2015) |
|---|---|---|---|---|
| 156,372.07 | 1,951.42 | 158,323.49 | 30,159.69 | 3.640 |

+See explanation of deferred interest on reverse side under *choosing your payment options*.

## 3. Year-to-date

| Total received* | | Escrow disbursements | |
|---|---|---|---|
| | 0.00 | | |
| Principal | 0.00 | Taxes | 5,481.94 |
| Interest | 0.00 | Additional assessments | 0.00 |
| Late charges/ fees | 0.00 | Homeowners insurance | 1,258.80 |
| Escrow | 0.00 | | |
| Optional products | 0.00 | | |
| Advance | 0.00 | | |

*This total may include the Unapplied funds balance from the balance summary displayed below.

## 4. Transaction activity

| Date | Description | Total | Principal | Interest paid | Escrow | Optional insurance | Late charges/ other fees | Unapplied funds |
|---|---|---|---|---|---|---|---|---|
| 11/17 | COUNTY TAXES | 2,723.38 | | | -2,723.38 | | | |

## 5. Important messages

**wellsfargo.com**

| Unpaid principal bal | 485,159.69 | Unpaid second principal bal | 0.00 | |
| Escrow bal | -28,463.53 | Unapplied funds bal | 0.00 | Unpaid adv bal | 4,246.98 | Maturity date 04/2037 |

Your loan is 055 payment(s) past due. Your oldest payment was due 05/01/10.
********If you are having difficulties making your mortgage payments, we encourage you to contact Wells Fargo at 1-888-345-1354. Some of our payment plans may pleasantly surprise you. If your payment has already been made, please disregard this message.

*Please detach and return with your payment.*

0000045504206000299833016132182016144699000000000000000000000000000124296

| Loan number: | 0045504206 | | Payment due date: | 12/01/14 |
| Name: ROBERT HEINTZE | - Minimum payment | $161,321.82 | Payment amount: | |
| | | | Additional amount to go to principal/deferred interest: | |
| | | | Total amount enclosed: | |

**WELLS FARGO HOME MORTGAGE**
PO Box 60505
City of Industry CA 91716-0505

For change of address or phone number, check the box and enter new information on reverse side.

Make Web Fargo your first choice

**Thinking of buying a new home or refinancing your mortgage?**

Stop by the Wells Fargo Home Mortgage
Store in your area or call                    1-888-261-5490

**Wells Fargo also offers**

| | |
|---|---|
| Checking, savings, CDs | 1-800-932-6736 |
| Home Rebate Credit Card | 1-800-932-6736 |
| Home equity loans and lines of credit | 1-888-237-0186 |
| Homeowners insurance | 1-866-444-0479 |
| Disaster recovery plan insurance | 1-800-234-7354 |
| Home warranty | 1-888-247-4777 |
| Student loans | 1-888-511-7304 |
| Past-due payment arrangements | 1-800-282-3451 |
| Identity theft protection | 1-877-247-9912 |

**Correspondence address**

P.O. Box 10335
Des Moines, IA 50306
Fax: 1-855-519-3481

**Important information**

If you send your payment to any other location, it may cause a processing delay. When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. If your mortgage check does not clear upon initial presentment, your bank may charge a fee and we may attempt to withdraw funds from your account electronically up to a maximum of three times. If we are not able to successfully collect these funds, the check amount will be reversed from your loan.

**Choosing your payment options**

This section explains the payment options listed on your billing statement.* These options provide you with flexibility in managing your monthly expenses.
1) **Minimum payment:** Covers the minimum amount due monthly[1].
2) **Interest only:** Pays your interest but does not reduce your loan balance. Covers only the minimum payment plus all regular monthly interest due.
3) **Scheduled principal and interest:** Reduces your loan balance and saves you money on taxes, because the interest you pay can be tax deductible (Consult your tax advisor). Includes interest and principal to pay off your loan within its scheduled term.
4) **15-year payment plan:** Includes all interest due and enough principal to pay off your loan within a 15-year term.

[1]**Deferred interest:** with many of our loans, when you choose to pay the minimum amount, your payment may not cover the total interest due. The unpaid portion -- called deferred interest -- is added to your loan balance and incurs interest at the same rate as your loan. You can avoid deferred interest by choosing payment option 2, 3, or 4 above. You can pay any portion of your outstanding deferred interest (shown in section 2 on the reverse side) at any time.

*Please note: Certain options may not appear on your statement if:
- Your minimum payment is larger than the interest only option or equal to the scheduled principal and interest option.
- You have past-due payments.

**Fee schedule**

Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed fees are as follows: ME, NM, RI, VT-S0; FL, LA, MI, OK-S25; AR, GA, HI, KS, MN, MT, WY-S30; PA-S50. Fees are subject to change without notice.

**Disputing account information reported to credit bureaus**

Wells Fargo Bank, N.A. may furnish information about your account to consumer reporting agencies. You have the right to dispute the accuracy of information that we have reported by writing to us at the correspondence address and describing the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that you believe relates to an identity theft, you will need to provide us with an identity theft report.

For those customers who reside in the state of New York, the debtor may file complaints about the servicer and obtain further information from the New York Banking Department by calling the department's Consumer Help Unit at 1-800-342-3736 or by visiting the department's website at www.banking.state.ny.us.

For those customers who reside in the state of Texas, Wells Fargo Home Mortgage will not recognize 3rd party property tax lien transfers or property tax deferrals. These programs create a lien on your property which takes priority over your mortgage. A change in lien position violates your mortgage agreement and Wells Fargo will take the necessary steps needed to ensure the mortgage lien is not at risk.

**Servicemembers Civil Relief Act** -- The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact our Military Customer Service Center at 1-800-642-0257 or fax your Active Duty Orders to 1-877-658-4585, attention Special Loans/SCRA.

**Important bankruptcy notice**

If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.  It is provided to you as a courtesy should you voluntarily decide to make payments on your account.  Notwithstanding any language contained in this statement, we want to assure you that we:
- Are not providing this information to you in an attempt to collect a debt from you or in any way violate any provision of the United States Bankruptcy Code
- Will not seek collection of any amount owing on your account that will be (or has been) discharged in connection with your bankruptcy case, except any amount that may be payable to us as a result of filing a proof of claim in your bankruptcy case; and
- Will only file a proof of claim for any amount owing on your account in your bankruptcy case if and when it is appropriate to do so.

In addition, if you filed a Chapter 7 bankruptcy case and received a discharge, but you did not reaffirm this debt, then please be advised that we are not sending this statement to you in an attempt to collect this debt from you personally and we can only exercise our rights against the property securing this debt.

**Contact us**

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

**Housing counselor information**

If you would like counseling or assistance, for a list of homeownership counselors or counseling organizations in your area, you can contact the following:
- U.S. Department of Housing and Urban Development (HUD), go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 1-800-569-4287.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

© 2014 Wells Fargo Bank, N.A. Member FDIC. All rights reserved. NMLSR ID 399801

 

---

**Change of information** Print your information in the spaces provided. Please check the box on the front side of this coupon. Your signature is required for all changes.

| | |
|---|---|
| New mailing address | |
| City | State   Zip |
| Home phone number | Work phone number |
| Email address | |

_____   _____   _____   _____
Borrower signature                Date            Co-borrower signature            Date

## Past Due Account Status

**As of the date of this statement, you are 1661 days delinquent on your account.** Failure to bring your loan current may result in fees, the acceleration of your repayment terms (or request for repayment of your balance in full), or the possibility of loss of your home through foreclosure.

The delinquent amount due on your account is $161,321.82.

### Recent Account History

| Statement Payment Date | Statement Payment Amount | Payment Amount Outstanding * |
|---|---|---|
| 11/01/14 | $2,998.33 | $2,998.33 |
| 10/01/14 | $2,998.33 | $2,998.33 |
| 09/01/14 | $2,998.33 | $2,998.33 |
| 08/01/14 | $2,998.33 | $2,998.33 |
| 07/01/14 | $2,998.33 | $2,998.33 |
| 06/01/14 | $2,998.33 | $2,998.33 |

*This amount does not include unapplied funds.

**As of the date of this statement, Wells Fargo HAS filed an acceleration notice in connection with a foreclosure proceeding as required by applicable state law.**

M9DLLSDTYV 012429  1NNNNNNNN NNN NN 002 002     032693     11035410.1

**This page is intentionally left blank.**



# EXHIBIT B

2014-0046069

| | Recorded | REC FEE 28.00 |
| Official Records | |
| County of | |
| Santa Barbara | |
| Joseph E. Holland | |
| County Clerk Recorder| |
| | EC |
| 08:00AM 08-Oct-2014 | Page 1 of 2 |

RECORDING REQUESTED BY

Simplifile

WHEN RECORDED MAIL TO

**RTS Pacific, Inc.**
616 1st Avenue, Suite 500
Seattle, WA 98104

APN#         065-204-04-00
Address     364 MAGNA VISTA STREET
                 SANTA BARBARA, CA 93110

# NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 05-FWA-121550

**_ATTENTION RECORDER_**: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/23/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**On October 31, 2014, at 01:00 PM, AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET, in the City of SANTA BARBARA, County of SANTA BARBARA, State of CALIFORNIA, RTS Pacific, Inc., a Washington corporation,** as duly appointed Trustee under that certain Deed of Trust executed by ROBERT HEINTZE, A WIDOW, AND AS GUARDIAN AD LITEM FOR MATTHEW HEINTZE, AS TENANTS IN COMMON, as Trustors, recorded on 3/29/2007, as Instrument No. 2007-0023031,    of Official Records in the office of the Recorder of SANTA BARBARA County, State of CALIFORNIA, under the power of sale therein contained, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER,** for cash, or cashier's check (payable at the time of sale in lawful money of the United States) without warranty express or implied as to title, use, possession or encumbrances, all right, title and interest conveyed to and now held by it as such Trustee, in and to the following described property situated in the aforesaid County and State, to-wit:

TAX PARCEL NO.     065-204-04-00

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street address or other common designation of the above described property is purported to be 364 MAGNA VISTA STREET , SANTA BARBARA, CA 93110.

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale. The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $618,035.98.

CA NOTS

**NOTICE TO POTENTIAL BIDDERS:**  If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction.  You will be bidding on a lien, not on the property itself.  Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property.  You should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.  You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.  If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 800-542-2550 for information regarding the trustee's sale or visit this Internet Web site www.rtspacific.com, using the file number assigned to this case.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

In compliance with California Civil Code 2923.5(c), the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one or more of the following methods: by telephone, by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent and that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Sale.

Dated:  10/1/2014

RTS Pacific, Inc., Trustee

By _____
       MARILEE HAKKINEN

Agent for Trustee:    AGENCY SALES AND POSTING
                        3210 EL CAMINO REAL, SUITE 200
                        IRVINE, CA 92602
Telephone Number:   (800) 542-2550
Sale Information:     (714) 730-2727 or http://www.rtspacific.com

Federal Law requires us to notify you that we are acting as a debt collector.  If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

CA NOTS

# EXHIBIT C

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT[sm] LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT
AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES
AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE.

LOAN NUMBER  0045504206                          DATE  March 23, 2007

BORROWER(S)   ROBERT HEINTZE, AN UNMARRIED MAN   sometimes called "Borrower" and sometimes simply called "I" or
"me "

PROPERTY ADDRESS  364 MAGNA VISTA ST, SANTA BARBARA, CA  93110-1923

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U S  **$455,000.00**, called "Principal," plus interest, to the order of the
Lender  The Lender is  WORLD SAVINGS BANK, FSB, a  FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR
ASSIGNEES, or anyone to whom this Note is transferred

**2.  INTEREST**

**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid   I will pay interest at the yearly rate of
**7.580%**  The interest rate I will pay  may change as described in this Section 2   Interest will be charged on the basis of a twelve
month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of
this Note

**(B)   Interest Change Dates**
The interest rate I will pay may change on the **1st** day of **May, 2007** and on the same day every month thereafter  Each date on
which my interest rate could change is called an "Interest Change Date."  The new rate of interest will become effective on each
Interest Change Date

**(C)   Interest Rate Limit**
My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap "

Q 0 1

LENDER'S USE ONLY

0045504206

**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index " The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index The most recent Index figure available on each Interest Change Date is called the "Current Index "

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.850** percentage points, called the "Margin," to the Current Index Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available For purposes of this Section 2(F) the Index is not "available" if  (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note  The selection of the alternative index shall be at Lender's sole discretion  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator  The Lender will give me notice of the alternative index

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month

I will make my monthly payments on the **1st** day of each month beginning on **May 1, 2007.** I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument  If, on **April 1, 2037,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U S **$ 1,681.77**  This amount will change as described in Sections 3(C) and 3(D) below  My initial  monthly  payment  amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **May, 2008** and on that day every **12th**  month thereafter  Each of these dates is called a "Payment Change Date "  My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date  However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment  This 7-1/2% limitation is called the "Payment Cap "  The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date

0045504206

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due.  A payment of principal before it is due is called a "Prepayment".  When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial prepayments be made on the date my regularly scheduled payments are due.  If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.

I may pay Deferred Interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of principal. During the first year of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month.  After the first year of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

0045504206

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **364 MAGNA VISTA ST, SANTA BARBARA, CA 93110-1923,** or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

0045504206

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)   Lender approves the creditworthiness of the transferee in writing,

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**12.  GOVERNING LAW; SEVERABILITY**
     This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

**13.  CLERICAL ERRORS**
     In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**
     If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

0045504206

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)

ROBERT HEINTZE

# EXHIBIT   D

RECORDING REQUESTED BY
FIRST AMERICAN TITLE

**2007-0023031**

**RECORDING REQUESTED BY:**
**WORLD SAVINGS BANK**

| Recorded | REC FEE       55.00 |
| Official Records | |
| County of | |
| Santa Barbara | |
| Joseph E. Holland | |

**WHEN RECORDED MAIL TO:**
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

| | NA |
| 08:00AM 29-Mar-2007 | Page 1 of 17 |

**LOAN NUMBER: 0045504206**

**NOTE AMOUNT: $455,000.00**

3246901 AH

17

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $568,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.     **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A)**   Security Instrument. This Deed of Trust, which is dated **March 23, 2007,** will be called the "Security Instrument."

     **(B)**   Borrower. **ROBERT HEINTZE, A WIDOW, AND AS GUARDIAN AD LITEM FOR MATTHEW HEINTZE, AS TENANTS IN COMMON** sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C)**   Lender. **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)
DEFERRED INTEREST         Page 1

CA

003

LENDER'S USE ONLY

0045504206

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$455,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **April 1, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.  BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.  DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **364 MAGNA VISTA ST, SANTA BARBARA, CA 93110-1923**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST                         Page 2

CA

0045504206

    (iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

    (iv)   All rents or royalties and other income from the Described Property;

    (v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

    (vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

    (vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

    (viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

    (ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

    (x)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

    I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

    I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

    I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**

    **(A)    Borrower's Obligations**

    I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

0045504206

**(B)      Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

0045504206

**3.     APPLICATION OF BORROWER'S PAYMENTS**
        Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured
Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

        First, to pay prepayment charges due under the Secured Notes;

        Second, to pay any advances due to Lender under this Security Instrument;

        Third, to pay the amounts due to Lender under Paragraph 2 above;

        Fourth, to pay interest due under the Secured Notes;

        Fifth, to pay deferred interest due under the Secured Notes;

        Sixth, to pay principal due under the Secured Notes;

        Last, to pay late charges due under the Secured Notes.

**4.     BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
        I will pay all taxes, assessments and any other charges and fines that may be imposed on the
Property and that may be superior to this Security Instrument.

        I will also make payments due under my lease if I am a tenant on the Property and I will pay ground
rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are
described in Paragraph 2 above or by making the payments on time to the Person owed them.

        Any claim, demand or charge that is made against property because an obligation has not been
fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to
this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if:
(A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in
writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the
superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the
Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in
writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender
determines that any part of the Property is subject to a superior lien, Lender may give to me a notice
identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth
above within 10 days of the giving of notice.

**5.     BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
        At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and
other improvements that now are or in the future will be located on the Property. The insurance must cover
loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies
and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the
periods of time required by Lender. I may choose the insurance company but my choice is subject to
Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these
insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee
Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will
have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of
paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                                                              CA

0045504206

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the Insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.     BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)

CA

0045504206

**7.     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.     LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)

**Page 7**

CA

0045504206

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

    **(A)    Borrower's Obligations**

        Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

        Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

    **(B)    Lender's Rights**

        Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

        Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

        Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

        Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

        If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

0045504206

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 364 MAGNA VISTA ST, SANTA BARBARA, CA 93110-1923. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD0011 (2004-03-3)                                                                                              CA

Page 9

0045504206

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.   CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.   LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.   WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.   CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.   MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                        CA

0045504206

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)                                                                                    CA

0045504206

**26.     AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

        If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

        <u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

        (i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

        (ii)    Lender approves the creditworthiness of the transferee in writing;

        (iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

        (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

        (v)     the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

        The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.     SUBSTITUTION OF TRUSTEE**
        I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)                                                                                                        CA

0045504206

**28.     RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.     RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.     STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)                                                                                      **CA**

0045504206

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)                                                                                    CA

0045504206

**BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ (Seal)
ROBERT HEINTZE

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)          [AF1 (2004-03-1)]                    Page 15                              CA
                          [B01 (2004-03-1)]

## ACKNOWLEDGMENT

State of California
County of _Santa Barbara_

On _3/23/07_ before me, _Ann L. Hamilton, Notary Public_
                                          (here insert name and title of the officer)

personally appeared _~ Robert Heintze ~_

_____

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be

the person(s) whose name(s) is/are subscribed to the within instrument and

acknowledged to me that he/she/they executed the same in his/her/their authorized

capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),

or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Ann L. Ham_

ANN L. HAMILTON
COMM. # 1574301
NOTARY PUBLIC-CALIFORNIA
SANTA BARBARA COUNTY
COMM. EXP. APRIL 29, 2009

                                                                    (Seal)

Order No.: 3246901c
Reference No.: Heintze
Escrow Officer: ANN HAMILTON
Escrow Number: 3246901AH

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SANTA BARBARA, State of California,** and described as follows:

**LOT 52 OF TRACT NO. 10029, UNIT NO. THREE, IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 53 PAGES 48 AND 49 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPT ALL OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500 FEET OF THE SURFACE OF SAID PROPERTY, WITH NO RIGHT OF ENTRY WITHIN SAID FIRST 500 FEET NOR TO THE SURFACE THEREOF, AS RESERVED IN DEED FROM NELSON W. WILLARD, A WIDOWER, RECORDED FEBRUARY 16, 1960 AS INSTRUMENT NO. 4979 IN BOOK 1715 PAGE 166 OF OFFICIAL RECORDS.**

APN No: **065-204-04**

## EXHIBIT "A"

**Page 8**

# EXHIBIT   E

½-2,

**Requested By**
**Title Court Service**

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

APN#      065-204-04-00
Address    364 MAGNA VISTA STREET
           SANTA BARBARA, CA 93110

120277169

|  2012-0078316  |  |  |
|---|---|---|
| Recorded | REC FEE | 21.00 |
| Official Records |  |  |
| County of |  |  |
| Santa Barbara |  |  |
| Joseph E. Holland |  |  |
| County Clerk Recorder| |  |  |
|  | EC |  |
| 08:00AM 19-Nov-2012 | Page 1 of 2 |  |



**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/23/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

## NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 05-FWA-121550

**On December 10, 2012, at 01:00 PM, AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET,** in the City of **SANTA BARBARA,** County of **SANTA BARBARA,** State of **CALIFORNIA, REGIONAL SERVICE CORPORATION, a California corporation,** as duly appointed Trustee under that certain Deed of Trust executed by ROBERT HEINTZE, A WIDOW, AND AS GUARDIAN AD LITEM FOR MATTHEW HEINTZE, AS TENANTS IN COMMON, as Trustors, recorded on 3/29/2007, as Instrument No. 2007-0023031,   of Official Records in the office of the Recorder of SANTA BARBARA County, State of CALIFORNIA, under the power of sale therein contained, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER,** for cash, or cashier's check (payable at the time of sale in lawful money of the United States) without warranty express or implied as to title, use, possession or encumbrances, all right, title and interest conveyed to and now held by it as such Trustee, in and to the following described property situated in the aforesaid County and State, to-wit:

TAX PARCEL NO.     065-204-04-00

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street address or other common designation of the above described property is purported to be 364 MAGNA VISTA STREET  , SANTA BARBARA, CA 93110.

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale. The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $569,048.99.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the same lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

CA NOTS

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 800-542-2550 for information regarding the trustee's sale or visit this Internet Web site www.rtrustee.com, using the file number assigned to this case. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

In compliance with California Civil Code 2923.5(c), the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one or more of the following methods: by telephone, by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent and that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Sale.

Dated:  11/5/2012

REGIONAL SERVICE CORPORATION, Trustee

By _____

MARILEE HAKKINEN, AUTHORIZED AGENT

Agent for Trustee:          AGENCY SALES AND POSTING
                            3210 EL CAMINO REAL, SUITE 200
                            IRVINE, CA 92602
Telephone Number:   (800) 542-2550
Sale Information:    (714) 730-2727 or http://www.rtrustee.com

CA NOTS

# EXHIBIT F

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

# 2014-0011165

| Recorded | REC FEE | 28.00 |
| Official Records | | |
| County of | | |
| Santa Barbara | | |
| Joseph E. Holland | | |
| County Clerk Recorder| | |

RECORDING REQUESTED BY

*Simplifile*

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

|  | | DR |
| 08:47AM 12-Mar-2014 | Page 1 of 2 |

APN#      065-204-04-00
Address   364 MAGNA VISTA STREET
          SANTA BARBARA, CA  93110

120277169

## NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 05-FWA-121550

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

***ATTENTION RECORDER***: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS
APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/23/2007.  UNLESS YOU TAKE ACTION TO PROTECT
YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF
THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**On April 4, 2014, at 01:00 PM, AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET,
in the City of SANTA BARBARA, County of SANTA BARBARA, State of CALIFORNIA, REGIONAL SERVICE
CORPORATION, a California corporation,** as duly appointed Trustee under that certain Deed of Trust executed by
ROBERT HEINTZE, A WIDOW, AND AS GUARDIAN AD LITEM FOR MATTHEW HEINTZE, AS TENANTS IN COMMON,
as Trustors, recorded on 3/29/2007, as Instrument No. 2007-0023031,   of Official Records in the office of the Recorder of
SANTA BARBARA County, State of CALIFORNIA, under the power of sale therein contained, **WILL SELL AT PUBLIC
AUCTION TO THE HIGHEST BIDDER,** for cash, or cashier's check (payable at the time of sale in lawful money of the
United States) without warranty express or implied as to title, use, possession or encumbrances, all right, title and interest
conveyed to and now held by it as such Trustee, in and to the following described property situated in the aforesaid County
and State, to-wit:

        TAX PARCEL NO.      065-204-04-00

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street
address or other common designation of the above described property is purported to be 364 MAGNA VISTA STREET  ,
SANTA BARBARA, CA 93110.

                                                                                    CA NOTS

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale. The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $603,364.36.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 800-542-2550 for information regarding the trustee's sale or visit this Internet Web site www.rtrustee.com, using the file number assigned to this case. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

In compliance with California Civil Code 2923.5(c), the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one or more of the following methods: by telephone, by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent and that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Sale.

Dated:   3/6/2014

REGIONAL SERVICE CORPORATION, Trustee

By   _Marilee Hakkinen_____

MARILEE HAKKINEN, AUTHORIZED AGENT
Agent for Trustee:      AGENCY SALES AND POSTING
                        3210 EL CAMINO REAL, SUITE 200
                        IRVINE, CA 92602
Telephone Number:   (800) 542-2550
Sale Information:    (714) 730-2727 or http://www.rtrustee.com

CA NOTS

# EXHIBIT G



### Account Information

|  |  |
|---|---|
| Fax: | 1-800-313-0892 |
| Telephone: | 1-877-371-9959 |
| Correspondence: | Wells Fargo Home Mortgage |
|  | P.O. Box 10335 |
|  | Des Moines, IA 50306 |
| Hours of Operation: | Mon – Thurs, 7 AM - 9 PM, |
|  | Fri, 7 AM - 8 PM, |
|  | Sat, 8 AM - 4 PM, CT |
| Loan Number: | 512-45504206 |
| Property Address: | 364 MAGNA VISTA ST |
|  | SANTA BARBARA, CA |
|  | 93110 |

Date: November 06, 2014

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, WELLS FARGO BANK, N. A.

Dear ROBERT HEINTZE ,

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**
We carefully reviewed the information you provided us, which includes a process that compares your information to the qualifications for assistance associated with your loan.  Here is the result of that review.

Program Name and Description:
Proprietary Step Rate Program - A proprietary step rate modification is a home preservation option that modifies the original loan terms to temporarily lower the monthly payment over a specified period of time. If the modification of the loan terms include reduction of the interest rate, the rate will gradually increase over a specified period of time.
At this time, you do not meet the requirements of this program because:
We are unable to modify your mortgage based on the results of your net present value (NPV) evaluation. For more information on NPV, please see the information below.

Program Name and Description:
MAP2R Modification - A MAP2R modification is a home preservation product that modifies the original loan terms to temporarily lower the monthly payment over a specified period of time. If the modification of the loan terms include reduction of the interest rate, the rate will gradually increase over a specified period of time.
At this time, you do not meet the requirements of this program because:
Based on the documentation you provided, we are unable to create an affordable mortgage payment that still meets the requirements of the program.

We reached this decision by reviewing your monthly income, which is calculated as $5,216.24, along with reviewing the other financial information you provided.

If the loan referenced above is a first lien on a property located in the state of California, and you occupy the property as your primary residence you can receive a complete list of the NPV information we used in your evaluation. Contact us in writing with your request.

Please fax your request to 1-800-313-0892 or mail to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

**What is NPV?**
NPV compares the outcome if your loan is modified to the outcome if your loan is not modified, in order to calculate its value. We use information provided by you and obtained from your loan file to complete your NPV evaluation. If the comparison is positive, your modification can be approved. If the comparison is negative, your modification cannot be approved.

In this case, your mortgage cannot be modified for some programs based on the results of your NPV evaluation. Below you will find your monthly gross income and property value used to calculate your NPV on 10/30/2014.
Month Gross Income: $5,216.24
Property Value: $720,000.00

Once we determined that you did not meet the requirements for a particular program, we did not continue to evaluate that program based on other criteria related to your loan type or information you may have supplied. Instead we moved to evaluate you for the next available program based on your information and the qualifications associated with your loan.

**You have the right to appeal this decision**
Carefully read over this letter, which states Wells Fargo Home Mortgage's decision. If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing. We have enclosed an Appeal Request Form for your convenience or you can write a letter of your own that explains the reason you disagree with the decision.

You can initiate an appeal by:
Faxing your appeal request to 1-800-313-0892.

Mailing your appeal request to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

To submit your appeal request in writing, by fax or mail — using the enclosed form or a letter of your own — please specify which of these two options applies to you:

Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo Home Mortgage will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo Home Mortgage does not receive my additional information within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review of the decision.

Appeal request guidelines:
• If you do not specify your intention for providing additional information, by selecting one of the two options above, we will follow the process described in Option B.
• If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate.
• We must receive your appeal request, with any additional information (as applicable) within 30 calendar days from the date of this letter.
• After an appeal is initiated, if you selected Option B and we do not receive your additional information within 30 calendar days from the date of this letter, we will review the decision based on the information we have at that time.
• You may have recently received a separate communication regarding another review we completed.  Our decision regarding that review may also be appealable, subject to the timelines and guidelines here.
• Be sure to include your loan number on your appeal request and any additional information.

Please note
After we receive your appeal request, you will receive a letter that confirms receipt of your request and outlines next steps in the appeal process.  While I am available to assist you with any questions you may have about this letter, but you must initiate an appeal request in one of the three ways listed above.

**Talk to me about your other options**
There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract
Wells Fargo Home Mortgage will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**We're here for you**
If you have any questions about the information in this letter please call me at the phone number listed below.

Sincerely,

RAUL BENCOMO

RAUL BENCOMO
Home Preservation Specialist
Wells Fargo Home Mortgage
855-664-8544  Ext: 85004
1-800-313-0892

**Contact us**

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

---

**Get free counseling to help manage expenses and avoid foreclosure**

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287. You can also call the HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage .

---

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov .

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801

HP601 ML

# Appeal Request Form

Carefully read over the letter that came with this form, which states Wells Fargo's decision. If you believe our decision is incorrect and want to appeal the decision, we recommend you use this form to submit a written appeal.

**Important:**
- We must receive your written request for an appeal request within 30 calendar days from the date of this letter, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate in your explanation below.

Please explain the reason you disagree with the decision.

_____
_____
_____
_____
_____
_____
_____

**Select and check the box that best applies to your request:**

[ ] Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

[ ] Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo does not receive my additional information within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review of the decision.

**Please note:** If you do not specify your intention for providing additional information by selecting one of the two options above, Wells Fargo will follow the process described in Option B.

Be sure to include your loan number on any supporting documents.

ROBERT HEINTZE

Loan Number: 512-45504206

Primary contact phone number: _____
Other contact phone numbers: _____
                              _____

Best day and time to call _____

**Mail your appeal request to:**            **Or fax your appeal request to:**
Wells Fargo Home Mortgage                    1-800-313-0892
Home Preservation T7408-016
4101 Wiseman Blvd
San Antonio, TX  78251

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801

CONSUMER LITIGATION LAW
100 N CITRUS ST STE 408
WEST COVINA, CA  91791



**Account Information**

Fax: 1-800-313-0892

Telephone: 1-877-371-9959

Correspondence: Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

Hours of Operation: Mon – Thurs, 7 AM - 9 PM
Fri, 7 AM - 8 PM
Sat, 8 AM - 4 PM CT

Loan Number: 512-45504206

Property Address: 364 MAGNA VISTA ST
SANTA BARBARA , CA
93110

Date: November 06, 2014

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, WELLS FARGO BANK, N. A.

Dear ROBERT HEINTZE

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Decision on the federal government's Home Affordable Modification Program (HAMP)**

We carefully reviewed the information you provided us. At this time, you do not meet the requirements of HAMP because:

Based on the documentation you provided us, your proposed monthly modified payment would be more than 42% of your monthly income. To help you understand this reason: • Your monthly housing expense payment includes the principal and interest payment on your first lien mortgage, plus any property taxes, hazard insurance premiums, escrow shortage amounts and homeowners association dues fees.

We reached this decision by reviewing your monthly income , which is calculated as $5,216.24 , along with reviewing the other financial information you provided.

**About the calculation required by the program**

In order for you to have qualified for this program, we were required by the government to calculate the net present value (NPV) for your modification. This calculation is based on a complex formula developed by the Department of the Treasury. We input certain financial information and combine it with information required by the Treasury to determine if the NPV is acceptable to the investor that owns your mortgage.

For your reference, we have enclosed a list of the specific NPV input values used in your evaluation. Please understand that the reason we are unable to offer you this program is not related to your NPV evaluation. We are providing this list for your information only, and you cannot dispute the input values used in your evaluation.

**You have the right to appeal this decision**

Carefully read over this letter, which states Wells Fargo's decision. If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing. We have enclosed an Appeal Request Form for your convenience or you can write a letter of your own that explains the reason you disagree

with the decision.

You can initiate an appeal by:
Faxing your appeal request to 1-800-313-0892.

Mailing your appeal request to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

To submit your appeal request in writing, by fax or mail — using the enclosed form or a letter of your own —
please specify which of these two options applies to you:

Option A. I want to appeal the decision I received. I have enclosed additional information for your
consideration, and/or I have no further information to provide. I understand Wells Fargo will review the
decision immediately based on the additional information I have provided (if applicable), or on the
information they currently have.

Option B. I will be appealing the decision I received. I will submit additional information for your
consideration at a later time. I understand that if Wells Fargo does not receive my additional information
within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review
of the decision.

Appeal request guidelines:
• If you do not specify your intention for providing additional information, by selecting one of the two options
above, we will follow the process described in Option B.
• If you are disputing the value of your property used in the decision, you must indicate the specific value you
believe is more accurate.
• We must receive your appeal request, with any additional information (as applicable) within 30 calendar
days from the date of this letter.
• After an appeal is initiated, if you selected Option B and we do not receive your additional information
within 30 calendar days from the date of this letter, we will review the decision based on the information we
have at that time.
• You may have recently received a separate communication regarding another review we completed. Our
decision regarding that review may also be appealable, subject to the timelines and guidelines here.
• Be sure to include your loan number on your appeal request and any additional information.

Please note
After we receive your appeal request, you will receive a letter that confirms receipt of your request and
outlines next steps in the appeal process. While I am available to assist you with any questions you may have
about this letter, you must initiate an appeal request in one of the ways listed above.

There may be other options available to help you avoid a foreclosure sale, provided you meet the
requirements.

If you're interested in staying in your home, you may be eligible for help through a different assistance
program. If you are eligible for an alternative assistance option, we will review your information and we will
notify you separately of the result of that review.

Other options you may be interested in : If the amount you owe on your mortgage is higher than what you
think you can sell your house for, you may want to consider what is known as a "short sale." This option could
allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a
short sale requires a purchase contract. Once we receive a purchase contract Wells Fargo  will review the
terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**We're here for you**
I am available to help you and can be reached at the number listed below or by email at HAMPNonApprovalInquiry@wellsfargo.com. Please note: sending your documents via email is not a secure method of transmitting information.

Sincerely,

RAUL BENCOMO

RAUL BENCOMO
Home Preservation Specialist
Wells Fargo Home Mortgage
855-664-8544  Ext: 85004
1-800-313-0892

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

---

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287. You can also call the HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo.

---

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801

HP602 ML

# Appeal Request Form

Carefully read over the letter that came with this form, which states Wells Fargo's decision. If you believe our decision is incorrect and want to appeal the decision, we recommend you use this form to submit a written appeal.

**Important:**
- We must receive your written request for an appeal request by December 06, 2014, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate in your explanation below.

Please explain the reason you disagree with the decision.

_____
_____
_____
_____
_____
_____
_____

**Select and check the box that best applies to your request:**

[ ] Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

[ ] Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if  does not receive my additional information by December 06, 2014, Wells Fargo will immediately move forward with a review of the decision.

**Please note:** If you do not specify your intention for providing additional information by selecting one of the two options above, Wells Fargo will follow the process described in Option B.

Be sure to include your loan number on any supporting documents.

ROBERT HEINTZE

Loan Number: 512-45504206
Primary contact phone number: _____
Other contact phone numbers: _____
_____
Best day and time to call _____

**Mail your appeal request to:**           **Or fax your appeal request to:**
Wells Fargo Home Mortgage                1-800-313-0892
Home Preservation T7408-016
4101 Wiseman Blvd
San Antonio, TX  78251

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801

Loan Number:     45504206

### Net Present Value Disclosure

The NPV input values we used in the NPV evaluation are listed in the NPV Data Input Fields and Values chart in this letter. You have 30 calendar days from the date of this letter to provide us with written evidence that one or more of the NPV input values is inaccurate.

If you wish to dispute more than one NPV input, you must provide us with the written evidence for each input being disputed at the same time. If your written evidence identifies material inaccuracies in the NPV input values, we will not conduct a foreclosure sale until the inaccuracies are reconciled. If the written evidence is valid and material to the NPV outcome, we will re-perform the NPV evaluation with the corrected input values.

If you believe that the "Property Value" input used in the NPV evaluation differs from the fair market value of your home, you must provide us with a recent estimate of the property value and a reasonable basis for that estimate at the same time that you provide evidence of any other disputed NPV value inputs. We will then perform a test NPV using your estimated value. If the test provides an NPV positive outcome, you have the right to request that we obtain an appraisal to confirm the value of your home and use that appraised value to conduct a new NPV evaluation.

The estimated cost of an appraisal in your community is $375.

If you wish to exercise this option we must, within 15 calendar days of the date we notify you that the preliminary NPV result is positive, receive a check [or other payment source acceptable to the servicer] for $200 as a deposit against the full cost of the appraisal. Once the appraisal is completed, we will perform a final NPV evaluation using the appraised value and any other corrected NPV inputs. Following the re-evaluation, we will provide you with the updated NPV outcome and input values.

Alternatively, you may request assistance from MHA Help at 1-888-995-HOPE prior to contacting us to evaluate whether your disputed NPV inputs, including "Property Value," would change the NPV outcome from negative to positive. Using the disputed inputs you provide, MHA Help will conduct a preliminary NPV re-evaluation and will provide you with the printed NPV result. You should provide that result to us as part of your written evidence that one or more of the NPV input values is inaccurate within 30 calendar days from the date of this letter.

You may only request one NPV re-evaluation from MHA Help prior to contacting us. If the re-evaluation performed by MHA Help or us using the disputed inputs returns a negative NPV result, you will not be eligible for additional appeals of other inputs.

### NPV Data Input Fields and Values chart

| InPut Data Fields | Explanation | Value used in NPV calculation to Determine the HAMP Eligibility of your mortgage |
|---|---|---|
| **I Borrower Information** | | |
| 1. Current Borrower Credit Score | This field identified your credit score as provided by one or more of the three national credit reporting agencies. | 478 |
| 2. Current Co-Borrower Credit Score | If a co-borrower is listed on the mortgage, this field identifies the co-borrower's credit score as provided by one or more of the three national credit reporting agencies | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all borrowers on your loan before any payroll deductions or taxes. | 5,216.24 |
| 4. Principal Residence Total Housing Expense | This field only applies if your application for a HAMP modification is for a property that is not your principal residence. This field identifies the amount of the total monthly housing expense (i.e., principal, interest, taxes, insurance and association fees, if any) for your principal residence, and the principal residence(s) of any co-borrower(s). | 0.00 |
| **II Property Information** | | |
| 5. Property- State | This field identifies the two letter state code of the property securing the mortgage for which you are applying for a HAMP modification. | CA |
| 6. Property - Zip Code | This field identifies the zip code of the property securing the mortgage for which you are applying for a HAMP modification. | 93110 |
| 7. Property Value | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used for this analysis. | 720,000.00 |
| 8. Property Valuation Type | This field identifies the method by which the property for which you are applying for a HAMP modification was valued (as noted in Field 6, Property Value) 1 – Automated Valuation Model (AVM) 2 – Exterior Broker Price Opinion (BPO) / Appraisal (as is value) 3 – Interior BPO / Appraisal (as is value) | 2 |
| 9. Occupancy | This field uses codes to identify the occupancy of the property for which you are applying for a HAMP modification. The servicer will for owner-occupied properties use a code of 1, 3 or 4 and for non-owner-occupied properties will use a code of 2. | |
| 10. Property – Monthly Gross Rental Income | This field only applies if your application for a HAMP modification is for a property that is not your principal residence. This field identifies the monthly gross rental income from the property for which you are applying for a HAMP modification. | 0.00 |

Loan Number:     45504206

### III. Mortgage Information

| | | |
|---|---|---|
| 11. Data Collection Date | This field identifies the date on which the Unpaid Principal Balance and other data used in the NPV analysis was collected by us. | 10/29/2014 |
| 12. Imminent Default Flag | This field indicates your default status as of the Data Collection Date. If you have not missed any payments or less than two payments are due and unpaid by the end of the month in which they are due, you are considered to be in imminent default and the value in this field is "Y". If two or more payments are due and unpaid by the end of the month in which they are due as of the Data Collection Date, the value in this field is "N". | N |
| 13. Investor Code | This field identifies the owner of the mortgage for which you are applying for a HAMP modification.<br>1 – Fannie Mae<br>2 – Freddie Mac<br>3 – Owned by a private investor other than us, your servicer<br>4 – Owned by us, your servicer or an affiliated company<br>5 – Ginnie Mae | 4 |
| 14. Unpaid Principal Balance at Origination | This field identifies the amount of the mortgage for which you are applying for a HAMP modification at the time it was originated (i.e., the amount you borrowed). | 455,000.00 |
| 15. First Payment Date at Origination | This field identifies the date the first payment on the mortgage for which you are applying for a HAMP modification was due after it was originated. | 05/01/2007 |
| 16. Product Before Modification | This field uses codes to identify the type of mortgage you held prior to your most recent application for a HAMP modification:<br>1.  Adjustable Rate Mortgage (ARM) and/or Interest Only mortgage loan<br>2.  Fixed Rate<br>3.  Step Rate<br>4.  One Step Variable<br>5.  Two Step Variable<br>6.  Three Step Variable<br>7.  Four Step Variable<br>8.  Five Step Variable<br>9.  Six Step Variable<br>10.  Seven Step Variable<br>11.  Eight Step Variable<br>12.  Nine Step Variable<br>13.  Ten Step Variable<br>14.  Eleven Step Variable<br>15.  Twelve Step Variable<br>16.  Thirteen Step Variable<br>17.  Fourteen Step Variable | 1 |
| 17. Adjustable Rate Mortgage (ARM) Reset Date | This field applies only if the type of mortgage you held prior to your most recent application for a HAMP modification is an Adjustable Rate Mortgage (ARM) loan.<br>This field identifies the date on which the next Adjustable Rate Mortgage (ARM) reset was due to occur, as of the Data Collection Date (Field 11). | 11/1/2014 |
| 18. Next Adjustable Rate Mortgage (ARM) Reset Rate | This field identifies the rate at which your mortgage was expected to change based on when the next reset date (Field 17) is scheduled to occur. Please look to your mortgage loan documentation for information on how your mortgage's rate is recalculated at its reset date.<br>If the reset date on your ARM loan is within 120 days of the Data Collection Date, this value in this field is the expected interest rate on your mortgage at the next reset date.<br>If the reset date on your ARM loan is more than 120 days from the Data Collection Date, the value in this field is your current interest rate at the time of NPV evaluation. | 3.64 |
| 19. Unpaid Principal Balance Before Modification | This field identifies the unpaid amount of principal (money you borrowed) on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. It does not include any unpaid interest or other amounts that you may owe. | 485,159.69 |
| 20. Interest Rate Before Modification | This field identifies the interest rate on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the interest rate of you mortgage. | 3.68 |
| 21. Remaining Term (# of Payment Months Remaining) | This field identifies the remaining number of months you have left to pay under the term of the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information the term of your mortgage. | 271 |

Loan Number:    45504206

| | | |
|---|---|---|
| 22. Principal and Interest Payment Before Modification | This field is the amount of principal and interest you were scheduled to pay each month as of the Data Collection Date.<br>A. If your loan had an adjustable rate scheduled to reset within 120 days, this field will reflect the principal and interest payment associated with the new interest rate.<br>B. If your loan had an adjustable rate scheduled to reset after 120 days, this field will reflect the current scheduled monthly mortgage payment and the note interest rate in effect at the time of evaluation.<br>C. If your mortgage is an Interest Only loan and your loan was in the interest only period, the value in this field is the interest payment that was due each month.<br>D. If your mortgage is a negative-amortization loan, the value in this field is the greater of:<br>a. the principal and interest payment you sent on the most recent payment date; or<br>b. the minimum payment required on your loan.<br><br>If you had a prior HAMP trial period plan or HAMP permanent modification, the value in this field is the HAMP payment. | 2,503.44 |
| 23. Monthly Real Estate Taxes | This field identifies the monthly cost of your real estate taxes. If your taxes are paid annually this amount will be 1/12th of the annual cost. | 435.42 |
| 24. Monthly Hazard and Flood Insurance | This field identifies the monthly cost of your hazard and flood insurance coverage. If your insurance is paid annually this amount will be 1/12th of the annual cost. | 104.90 |
| 25. Homeowners Association Dues/Fees | This field identifies your monthly homeowner's or condominium association fee payments, if any, and/or any future monthly escrow shortages. If your homeowner's or condominium association fee payments are paid annually, this will be 1/12th of the annual cost.<br>If your property has no association fee payments and/or any future monthly escrow shortages, this field is blank. | 0.00 |
| 26. Months Past Due | This field identifies the number of mortgage payments you would have had to make in order to make your mortgage current, as of the Data Collection Date. | 54 |
| 27. Mortgage Insurance Coverage Percent | This field identifies the percentage of private mortgage insurance coverage on the mortgage for which you are applying for a HAMP modification. If you do not have private mortgage insurance this field is blank. | 0.00 |
| 28. Capitalized UPB Amount | This field identifies the capitalized unpaid principal balance amount that includes all outstanding principal, accrued interest, escrow advances as of the data collection date. | 0.00 |

**IV Proposed Modification Information**

The fields below describe the proposed HAMP modification that was calculated by your servicer according to the HAMP program guidelines (subject to investor restrictions) that were used in your Net Present Value (NPV) evaluation.

| | | |
|---|---|---|
| 29. NPV Date | This field identifies the initial date that the Net Present Value evaluation was conducted on the mortgage for which you are applying for a HAMP modification. | 10/29/2014 |
| 30. Modification Fees | This field identifies the total amount of costs and fees that would have been paid by the investor (owner) of your loan, if you had been approved for a HAMP modification. It includes expenses such as notary fees, property valuation, credit report and other required fees. | 0.00 |
| 31. Mortgage Insurance Partial Claim Amount of the Proposed HAMP Modification | This field identifies any mortgage insurance payout amount as part of the proposed HAMP modified mortgage, which is, at the discretion of your mortgage insurance company.<br>This should be zero if you were not approved for a trial period plan or permanent HAMP modification for reason of negative NPV. | 0.00 |
| 32. Unpaid Principal Balance of the Proposed HAMP Tier 1 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance on which you would have been required to pay interest if you had received a HAMP Tier 1 modification.<br>It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 36) or proposed principal forgiveness (Field 37). | 485,159.69 |
| 33. Interest Rate of the Proposed HAMP Tier 1 Modification | This field identifies the starting interest rate of the proposed HAMP Tier 1 modified mortgage. This rate is fixed for at least the first 5 years after modification. | 2.00 |
| 34. Amortization Term of the Proposed HAMP Tier 1 Modification | This field identifies the number of months left to pay the proposed HAMP Tier 1 modified mortgage. | 480 |
| 35. Principal and Interest Payment of the Proposed HAMP Tier 1 Modification | This field identifies the amount of the monthly principal and interest payment on the proposed HAMP Tier 1 modified mortgage. | 1,469.19 |
| 36. Principal Forbearance Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forbear on the proposed HAMP Tier 1 modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | 0.00 |
| 37. Principal Forgiveness Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 1 modified mortgage. | 0.00 |

Loan Number:     45504206

| | | |
|---|---|---|
| 38. Unpaid Principal Balance of the Proposed HAMP Tier 2 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance [as of the Data Collection Date] on which you would have been required to pay interest if you had received a HAMP Tier 2 modification. It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 43 or the amount calculated by the NPV model under the standard Tier 2 modification) or proposed principal forgiveness (Field 39). | 0.00 |
| 39. Principal Forgiveness Amount of the Proposed HAMP Tier 2 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 2 modified mortgage. | 0.00 |
| 40. Investor Override Criteria for Tier 2 Modification | This field indicates whether the owner of your mortgage provides for different terms than would be provided under the standard HAMP Tier 2 Modification. If not, the value in this field is "N". If here are terms other than the standard terms, the value in this field is "Y". | |
| 41. Interest Rate of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different interest rate than would be provided under the standard HAMP Tier 2 Modification. This field identifies the interest rate of the proposed HAMP Tier 2 modified mortgage. This rate is fixed. | 0.00 |
| 42. Amortization Term of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different amortization term than would be provided under the standard HAMP Tier 2 Modification. This field identifies the number of months left to pay the proposed HAMP modified mortgage. | 0 |
| 43. Principal Forbearance Amount of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different forbearance amount than would be provided under the standard HAMP Tier 2 Modification. This field identifies the amount of principal forborne on the proposed HAMP modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | 0.00 |

## HOW WE USE YOUR CREDIT REPORT

Wells Fargo Home Mortgage a division of Wells Fargo Bank, N.A. reviewed your loan for modification under the federal government's *Home Affordable Modification Program* (HAMP); we used information found in your credit report as one of the factors to determine your eligibility for this program.

To qualify for HAMP, the government requires us to calculate the net present value (NPV) for your modification. Your credit score was one of the values used in your NPV calculation to see if your loan could be modified under HAMP. We are required by law to disclose the score provided by the credit bureau that we used in this calculation.

When you review the credit score, please keep in mind that many other values in addition to the credit score when the NPV was calculated, so the final decision regarding eligibility for HAMP was not based directly on the credit score.

**About the credit score used in your NPV calculation**
The credit score we obtained in connection with your NPV calculation was provided by Equifax. Your score on  10/29/2014  was  478 out of a maximum possible score of  818. It's important to note that very few borrowers receive the maximum score.

     Score range:  250-818

**What to do if you have questions about your credit score**
Please understand that Wells Fargo Home Mortgage did not calculate the credit score, nor did we develop the credit scoring model. If you'd like to request a free copy of the credit report used in the NPV calculation, please contact the credit bureau directly at the address or phone number below:

          Mail:     EQUIFAX CREDIT INFORMATION SERVICES
                    1550 Peachtree St.
                    P.O. Box 740241
                    Atlanta, GA 30374-0241
          Phone:    1-800-685-1111

Website:  www.equifax.com/fcra <http://www.equifax.com/fcra>

Please be aware that Equifax was not involved in making any decisions about your request for a loan modification and cannot provide information about the NPV calculation.

CONSUMER LITIGATION LAW
100 N CITRUS ST STE 408

WEST COVINA, CA  91791

# EXHIBIT H



**C L L C**

CONSUMER LITIGATION LAW CENTER, APC

3 December 2014

**BY U.S. MAIL AND FAX**
**TO (800) 313-0892**

Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Boulevard
San Antonio, TX 78251

Re:    Borrower:            Robert Heintze
       Loan No:             512-45504206
       Property Address:    364 Magna Vista Street, Santa Barbara, CA 93110

### 30 DAY DEMAND FOR APPEAL OF LOAN MODIFICATION DENIAL

Dear Wells Fargo Home Mortgage:

This appeal has been sent to you in response to your two November 6, 2014 loan modification denial letters ("Letters") attached hereto as Exhibit "A". Under the terms of your Letters and California *Civil Code* section 2923.6(d), our client Robert Heintze ("Borrower") has a right to appeal your decision through December 6, 2014.

As instructed in your Letters, Borrower hereby exercises appeal "Option A" and demands that you re-review Borrower with the information you already have because your denial: (1) uses incorrect monthly income in the NPV calculation, (2) falsely claims inability to create a Home Affordable Modification Program ("HAMP") modification because the proposed monthly payment would be 42% of Borrower's monthly income, and without going outside the program guidelines, and (3) falsely claims that you cannot create a monthly payment within Wells Fargo's Mortgage Assistance Program 2 ("MAP2R") modification guidelines.



CONSUMER LITIGATION LAW CENTER, APC

3 December 2014

**1.      The NPV Calculation Uses Incorrect Monthly Income.**

First, your NPV calculation to determine loan modification eligibility under HAMP uses a gross monthly income of $5,216.24, which is incorrect and not supported by the loan modification application.  Borrower actually submitted a gross monthly income of $5,726.25 and, when calculating Borrower's modification eligibility using this income, Borrower is eligible for a HAMP modification, a HAMP Tier II modification, and a MAP2R Modification, as discussed in depth below.

Borrower's gross monthly income of $5,726.25 submitted to you shows that as of the pay period ending September 15, 2014, Borrower's year to date income was $41,023.15.  This translates to a gross monthly income of $4,826.25 by dividing $41,023.15 by 8½ months in 2014 as of the September 15, 2014 pay period end date.  Borrower also submitted to you $900 per month of rental income for a total of $5,726.25 of gross monthly income.

**2.      Borrower Is Eligible For A Modification Within HAMP Tier II Guidelines.**

Your HAMP Tier I denial states that you are unable to create an affordable payment without changing the loan terms beyond the guidelines of HAMP.  This denial completely overlooks Borrower's HAMP Tier II eligibility.  HAMP Tier II seeks to create a target payment that is between 25% and 55% of the borrower's gross monthly income.

Here, with a gross monthly income of $5,726.25, the target monthly payment even at a full 55% of Borrower's gross monthly income is $3,149.44 including taxes of $435.42 per month and insurance of $104.90 per month.  This means that the target principal and interest payment would be $2,609.12 [$3,149.44 − (435.42 + 104.90)].  HAMP Tier 2 allows the loan term to be extended up to 480 months (40 years), and the interest rate to be reduced to 4.875% under current HAMP Tier 2 guidelines.

If Borrower paid principal and interest at 4.875% on a loan set at the value of $485,159.69—the unpaid principal balance as of the date of your NPV calculation—Borrower would have a monthly payment of $2,299.40.  With taxes and insurance added back in, Borrower's monthly payment would be $2,839.72, only 49.6% of Borrower's gross monthly income.  This is almost



CONSUMER LITIGATION LAW CENTER, APC

3 December 2014

6% below the maximum threshold for HAMP Tier II eligibility and, therefore, Borrower qualifies for a HAMP Tier II modification.

**3.    Borrower Qualifies For A Loan Modification Under The MAP2R Program.**

You also incorrectly denied Borrower for a loan modification under MAP2R on grounds that you "are unable to create an affordable mortgage payment that stills meets the requirements of the program." Your ineligibility determination is incorrect for the following reasons.

First, MAP2R seeks to create a monthly payment plus taxes and insurance that is as close to 31% of the borrower's gross monthly income as possible. First, all accrued interest, late charges, and fees are forgiven along with escrow advances and corporate/default related advances to determine if this forgiveness represents at least 10% of the pre-modification unpaid principal balance.

Here, the pre-modification unpaid principal balance is $485,159.69, 10% of which is $48,515.90. The total amount of interest, fees, and charges discussed above is approximately $118,204.31. This is greater than 10% of the current past due amount, so the interest, fees, and charges can be forgiven and the modification will be based on the $485,159.69 principal balance. The loan term can also be extended up to 480 months, or 40 years. The interest rate can also be reduced in increments of 0.125% to a maximum of 2% for the first three years then rise to the current market rate at the end of the third year.

Here, with a principal balance of $485,159.69, a 2% interest rate for three years and a 40 year term, Borrower's monthly principal and interest payment would be $1,469.19 plus taxes and insurance for a total of $2,009.51 each month, which is 35% of Borrower's gross monthly income of $5,726.25. MAP2R does not require a monthly payment that is exactly 31% of the borrower's gross monthly income, only that the monthly debt-to-income ratio be as close to 31% as possible. Thus, Borrower qualifies for a loan modification under MAP2R.

Based on the foregoing, Borrower is appealing your loan modification denial immediately. Based on the timing of your denial letter, any appeal must be made on or before the December 6,



CONSUMER LITIGATION LAW CENTER, APC

3 December 2014

2014 statutory thirty day appeal deadline. Thus, this appeal is timely and Borrower must be reviewed for a modification again for the reasons discussed above.

Please feel free to contact me to discuss the matter further. I look forward to your prompt attention and response in this matter.

CONSUMER LITIGATION LAW CENTER, APC

Sincerely,

Jeffrey J. Ogorek, Esq.

# EXHIBIT A



## Account Information

| | |
|---|---|
| Fax: | 1-800-313-0892 |
| Telephone: | 1-877-371-9959 |
| Correspondence: | Wells Fargo Home Mortgage |
| | P.O. Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon – Thurs, 7 AM - 9 PM, |
| | Fri, 7 AM - 8 PM, |
| | Sat, 8 AM - 4 PM, CT |
| Loan Number: | 512-45504206 |
| Property Address: | 364 MAGNA VISTA ST |
| | SANTA BARBARA, CA |
| | 93110 |

Date: November 06, 2014

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, WELLS FARGO BANK, N. A.

Dear ROBERT HEINTZE ,

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**

We carefully reviewed the information you provided us, which includes a process that compares your information to the qualifications for assistance associated with your loan.  Here is the result of that review.

Program Name and Description:
Proprietary Step Rate Program - A proprietary step rate modification is a home preservation option that modifies the original loan terms to temporarily lower the monthly payment over a specified period of time. If the modification of the loan terms include reduction of the interest rate, the rate will gradually increase over a specified period of time.
At this time, you do not meet the requirements of this program because:
We are unable to modify your mortgage based on the results of your net present value (NPV) evaluation. For more information on NPV, please see the information below.

Program Name and Description:
MAP2R Modification - A MAP2R modification is a home preservation product that modifies the original loan terms to temporarily lower the monthly payment over a specified period of time. If the modification of the loan terms include reduction of the interest rate, the rate will gradually increase over a specified period of time.
At this time, you do not meet the requirements of this program because:
Based on the documentation you provided, we are unable to create an affordable mortgage payment that still meets the requirements of the program.

We reached this decision by reviewing your monthly income, which is calculated as $5,216.24, along with reviewing the other financial information you provided.

If the loan referenced above is a first lien on a property located in the state of California, and you occupy the property as your primary residence you can receive a complete list of the NPV information we used in your evaluation. Contact us in writing with your request.

Please fax your request to 1-800-313-0892 or mail to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

**What is NPV?**
NPV compares the outcome if your loan is modified to the outcome if your loan is not modified, in order to calculate its value. We use information provided by you and obtained from your loan file to complete your NPV evaluation. If the comparison is positive, your modification can be approved. If the comparison is negative, your modification cannot be approved.

In this case, your mortgage cannot be modified for some programs based on the results of your NPV evaluation. Below you will find your monthly gross income and property value used to calculate your NPV on 10/30/2014.
Month Gross Income: $5,216.24
Property Value: $720,000.00

Once we determined that you did not meet the requirements for a particular program, we did not continue to evaluate that program based on other criteria related to your loan type or information you may have supplied. Instead we moved to evaluate you for the next available program based on your information and the qualifications associated with your loan.

**You have the right to appeal this decision**
Carefully read over this letter, which states Wells Fargo Home Mortgage's decision. If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing. We have enclosed an Appeal Request Form for your convenience or you can write a letter of your own that explains the reason you disagree with the decision.

You can initiate an appeal by:
Faxing your appeal request to 1-800-313-0892.

Mailing your appeal request to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

To submit your appeal request in writing, by fax or mail — using the enclosed form or a letter of your own — please specify which of these two options applies to you:

Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo Home Mortgage will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo Home Mortgage does not receive my additional information within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review of the decision.

Appeal request guidelines:
• If you do not specify your intention for providing additional information, by selecting one of the two options above, we will follow the process described in Option B.
• If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate.
• We must receive your appeal request, with any additional information (as applicable) within 30 calendar days from the date of this letter.
• After an appeal is initiated, if you selected Option B and we do not receive your additional information within 30 calendar days from the date of this letter, we will review the decision based on the information we have at that time.
• You may have recently received a separate communication regarding another review we completed. Our decision regarding that review may also be appealable, subject to the timelines and guidelines here.
• Be sure to include your loan number on your appeal request and any additional information.

Please note
After we receive your appeal request, you will receive a letter that confirms receipt of your request and outlines next steps in the appeal process. While I am available to assist you with any questions you may have about this letter, but you must initiate an appeal request in one of the three ways listed above.

**Talk to me about your other options**
There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract
Wells Fargo Home Mortgage will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**We're here for you**
If you have any questions about the information in this letter please call me at the phone number listed below.

Sincerely,

*RAUL BENCOMO*

RAUL BENCOMO
Home Preservation Specialist
Wells Fargo Home Mortgage
855-664-8544  Ext: 85004
1-800-313-0892

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

---

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287. You can also call the HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage .

---

Wells Fargo Home Mortgage  is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case,  Wells Fargo Home Mortgage  will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov .

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801

HP601 ML

# Appeal Request Form

Carefully read over the letter that came with this form, which states Wells Fargo's decision. If you believe our decision is incorrect and want to appeal the decision, we recommend you use this form to submit a written appeal.

**Important:**
- We must receive your written request for an appeal request within 30 calendar days from the date of this letter, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate in your explanation below.

Please explain the reason you disagree with the decision.

_____

_____

_____

_____

_____

_____

_____

**Select and check the box that best applies to your request:**

[ ] Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

[ ] Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo does not receive my additional information within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review of the decision.

**Please note:** If you do not specify your intention for providing additional information by selecting one of the two options above, Wells Fargo will follow the process described in Option B.

Be sure to include your loan number on any supporting documents.

ROBERT HEINTZE

Loan Number: 512-45504206

Primary contact phone number: _____

Other contact phone numbers: _____

_____

Best day and time to call _____

**Mail your appeal request to:**
Wells Fargo Home Mortgage
Home Preservation T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

**Or fax your appeal request to:**
1-800-313-0892

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801

CONSUMER LITIGATION LAW
100 N CITRUS ST STE 408
WEST COVINA, CA  91791

# EXHIBIT B



### Account Information

|  |  |
|---|---|
| Fax: | 1-800-313-0892 |
| Telephone: | 1-877-371-9959 |
| Correspondence: | Wells Fargo Home Mortgage |
|  | P.O. Box 10335 |
|  | Des Moines, IA 50306 |
| Hours of Operation: | Mon – Thurs, 7 AM - 9 PM |
|  | Fri, 7 AM - 8 PM |
|  | Sat, 8 AM - 4 PM CT |
| Loan Number: | 512-45504206 |
| Property Address: | 364 MAGNA VISTA ST |
|  | SANTA BARBARA , CA |
|  | 93110 |

Date: November 06, 2014

Subject: Your request for assistance

Note: We service your mortgage on behalf of your investor, WELLS FARGO BANK, N. A.

Dear ROBERT HEINTZE

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Decision on the federal government's Home Affordable Modification Program (HAMP)**
We carefully reviewed the information you provided us. At this time, you do not meet the requirements of HAMP because:

 Based on the documentation you provided us, your proposed monthly modified payment would be more than 42% of your monthly income. To help you understand this reason: • Your monthly housing expense payment includes the principal and interest payment on your first lien mortgage, plus any property taxes, hazard insurance premiums, escrow shortage amounts and homeowners association dues fees.

We reached this decision by reviewing your monthly income , which is calculated as $5,216.24 , along with reviewing the other financial information you provided.

**About the calculation required by the program**
In order for you to have qualified for this program, we were required by the government to calculate the net present value (NPV) for your modification. This calculation is based on a complex formula developed by the Department of the Treasury. We input certain financial information and combine it with information required by the Treasury to determine if the NPV is acceptable to the investor that owns your mortgage.

For your reference, we have enclosed a list of the specific NPV input values used in your evaluation. Please understand that the reason we are unable to offer you this program is not related to your NPV evaluation. We are providing this list for your information only, and you cannot dispute the input values used in your evaluation.

**You have the right to appeal this decision**
Carefully read over this letter, which states Wells Fargo's decision. If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing. We have enclosed an Appeal Request Form for your convenience or you can write a letter of your own that explains the reason you disagree

with the decision.

You can initiate an appeal by:
Faxing your appeal request to 1-800-313-0892.

Mailing your appeal request to:
Wells Fargo Home Mortgage
Home Preservation Mail Code T7408-016
4101 Wiseman Blvd
San Antonio, TX 78251

To submit your appeal request in writing, by fax or mail — using the enclosed form or a letter of your own — please specify which of these two options applies to you:

Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if Wells Fargo does not receive my additional information within 30 calendar days from the date of this letter, Wells Fargo will immediately move forward with a review of the decision.

Appeal request guidelines:
• If you do not specify your intention for providing additional information, by selecting one of the two options above, we will follow the process described in Option B.
• If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate.
• We must receive your appeal request, with any additional information (as applicable) within 30 calendar days from the date of this letter.
• After an appeal is initiated, if you selected Option B and we do not receive your additional information within 30 calendar days from the date of this letter, we will review the decision based on the information we have at that time.
• You may have recently received a separate communication regarding another review we completed.  Our decision regarding that review may also be appealable, subject to the timelines and guidelines here.
• Be sure to include your loan number on your appeal request and any additional information.

Please note
After we receive your appeal request, you will receive a letter that confirms receipt of your request and outlines next steps in the appeal process.  While I am available to assist you with any questions you may have about this letter, you must initiate an appeal request in one of the ways listed above.

There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

If you're interested in staying in your home, you may be eligible for help through a different assistance program. If you are eligible for an alternative assistance option, we will review your information and we will notify you separately of the result of that review.

Other options you may be interested in : If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract Wells Fargo  will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**We're here for you**
I am available to help you and can be reached at the number listed below or by email at HAMPNonApprovalInquiry@wellsfargo.com. Please note: sending your documents via email is not a secure method of transmitting information.

Sincerely,

RAUL BENCOMO

RAUL BENCOMO
Home Preservation Specialist
Wells Fargo Home Mortgage
855-664-8544  Ext: 85004
1-800-313-0892

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.

---

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287. You can also call the HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo.

---

Wells Fargo Home Mortgage is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov .

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801

HP602 ML

# Appeal Request Form

Carefully read over the letter that came with this form, which states Wells Fargo's decision. If you believe our decision is incorrect and want to appeal the decision, we recommend you use this form to submit a written appeal.

**Important:**
- We must receive your written request for an appeal request by December 06, 2014, or we will not move forward with a review of the decision. While not required, please provide any additional information (as applicable) that will help us look into your request.
- If you are disputing the value of your property used in the decision, you must indicate the specific value you believe is more accurate in your explanation below.

Please explain the reason you disagree with the decision.

_____
_____
_____
_____
_____
_____
_____

**Select and check the box that best applies to your request:**

[ ] Option A. I want to appeal the decision I received. I have enclosed additional information for your consideration, and/or I have no further information to provide. I understand Wells Fargo will review the decision immediately based on the additional information I have provided (if applicable), or on the information they currently have.

[ ] Option B. I will be appealing the decision I received. I will submit additional information for your consideration at a later time. I understand that if  does not receive my additional information by December 06, 2014, Wells Fargo will immediately move forward with a review of the decision.

**Please note:** If you do not specify your intention for providing additional information by selecting one of the two options above, Wells Fargo will follow the process described in Option B.

Be sure to include your loan number on any supporting documents.

ROBERT HEINTZE

Loan Number: 512-45504206
Primary contact phone number: _____
Other contact phone numbers: _____
_____

Best day and time to call _____

**Mail your appeal request to:**                **Or fax your appeal request to:**
Wells Fargo Home Mortgage                    1-800-313-0892
Home Preservation T7408-016
4101 Wiseman Blvd
San Antonio, TX  78251

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. © 2014 Wells Fargo Bank N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801

Loan Number:     45504206

## Net Present Value Disclosure

The NPV input values we used in the NPV evaluation are listed in the NPV Data Input Fields and Values chart in this letter. You have 30 calendar days from the date of this letter to provide us with written evidence that one or more of the NPV input values is inaccurate.

If you wish to dispute more than one NPV input, you must provide us with the written evidence for each input being disputed at the same time. If your written evidence identifies material inaccuracies in the NPV input values, we will not conduct a foreclosure sale until the inaccuracies are reconciled. If the written evidence is valid and material to the NPV outcome, we will re-perform the NPV evaluation with the corrected input values.

If you believe that the "Property Value" input used in the NPV evaluation differs from the fair market value of your home, you must provide us with a recent estimate of the property value and a reasonable basis for that estimate at the same time that you provide evidence of any other disputed NPV values. We will then perform a test NPV using your estimated value. If the test provides an NPV positive outcome, you have the right to request that we obtain an appraisal to confirm the value of your home and use that appraised value to conduct a new NPV evaluation.

The estimated cost of an appraisal in your community is $375.

If you wish to exercise this option we must, within 15 calendar days of the date we notify you that the preliminary NPV result is positive, receive a check [or other payment source acceptable to the servicer] for $200 as a deposit against the full cost of the appraisal. Once the appraisal is completed, we will perform a final NPV evaluation using the appraised value and any other corrected NPV inputs. Following the re-evaluation, we will provide you with the updated NPV outcome and input values.

Alternatively, you may request assistance from MHA Help at 1-888-995-HOPE prior to contacting us to evaluate whether your disputed NPV inputs, including "Property Value," would change the NPV outcome from negative to positive. Using the disputed inputs you provide, MHA Help will conduct a preliminary NPV re-evaluation and will provide you with the printed NPV result. You should provide that result to us as part of your written evidence that one or more of the NPV input values is inaccurate within 30 calendar days from the date of this letter.

You may only request one NPV re-evaluation from MHA Help prior to contacting us. If the re-evaluation performed by MHA Help or us using the disputed inputs returns a negative NPV result, you will not be eligible for additional appeals of other inputs.

### NPV Data Input Fields and Values chart

| InPut Data Fields | Explanation | Value used in NPV calculation to Determine the HAMP Eligibility of your mortgage |
|---|---|---|
| **I Borrower Information** | | |
| 1. Current Borrower Credit Score | This field identified your credit score as provided by one or more of the three national credit reporting agencies. | 478 |
| 2. Current Co-Borrower Credit Score | If a co-borrower is listed on the mortgage, this field identifies the co-borrower's credit score as provided by one or more of the three national credit reporting agencies | |
| 3. Monthly Gross Income | This field identifies the monthly gross income of all borrowers on your loan before any payroll deductions or taxes. | 5,216.24 |
| 4. Principal Residence Total Housing Expense | This field only applies if your application for a HAMP modification is for a property that is not your principal residence.  This field identifies the amount of the total monthly housing expense (i.e., principal, interest, taxes, insurance and association fees, if any) for your principal residence, and the principal residence(s) of any co-borrower(s). | 0.00 |
| **II Property Information** | | |
| 5. Property- State | This field identifies the two letter state code of the property securing the mortgage for which you are applying for a HAMP modification. | CA |
| 6. Property - Zip Code | This field identifies the zip code of the property securing the mortgage for which you are applying for a HAMP modification. | 93110 |
| 7. Property Value | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used for this analysis. | 720,000.00 |
| 8. Property Valuation Type | This field identifies the method by which the property for which you are applying for a HAMP modification was valued (as noted in Field 6, Property Value) | 2 |
| | 1 – Automated Valuation Model (AVM) | |
| | 2 – Exterior Broker Price Opinion (BPO) / Appraisal (as is value) | |
| | 3 – Interior BPO / Appraisal (as is value) | |
| 9. Occupancy | This field uses codes to identify the occupancy of the property for which you are applying for a HAMP modification. The servicer will for owner-occupied properties use a code of 1, 3 or 4 and for non-owner-occupied properties will use a code of 2. | |
| 10. Property – Monthly Gross Rental Income | This field only applies if your application for a HAMP modification is for a property that is not your principal residence. This field identifies the monthly gross rental income from the property for which you are applying for a HAMP modification. | 0.00 |

Loan Number: 45504206

### III. Mortgage Information

| | | |
|---|---|---|
| 11. Data Collection Date | This field identifies the date on which the Unpaid Principal Balance and other data used in the NPV analysis was collected by us. | 10/29/2014 |
| 12. Imminent Default Flag | This field indicates your default status as of the Data Collection Date. If you have not missed any payments or less than two payments are due and unpaid by the end of the month in which they are due, you are considered to be in imminent default and the value in this field is "Y". If two or more payments are due and unpaid by the end of the month in which they are due as of the Data Collection Date, the value in this field is "N". | N |
| 13. Investor Code | This field identifies the owner of the mortgage for which you are applying for a HAMP modification.<br>1 – Fannie Mae<br>2 – Freddie Mac<br>3 – Owned by a private investor other than us, your servicer<br>4 – Owned by us, your servicer or an affiliated company<br>5 – Ginnie Mae | 4 |
| 14. Unpaid Principal Balance at Origination | This field identifies the amount of the mortgage for which you are applying for a HAMP modification at the time it was originated (i.e., the amount you borrowed). | 455,000.00 |
| 15. First Payment Date at Origination | This field identifies the date the first payment on the mortgage for which you are applying for a HAMP modification was due after it was originated. | 05/01/2007 |
| 16. Product Before Modification | This field uses codes to identify the type of mortgage you held prior to your most recent application for a HAMP modification:<br>1. Adjustable Rate Mortgage (ARM) and/or Interest Only mortgage loan<br>2. Fixed Rate<br>3. Step Rate<br>4. One Step Variable<br>5. Two Step Variable<br>6. Three Step Variable<br>7. Four Step Variable<br>8. Five Step Variable<br>9. Six Step Variable<br>10. Seven Step Variable<br>11. Eight Step Variable<br>12. Nine Step Variable<br>13. Ten Step Variable<br>14. Eleven Step Variable<br>15. Twelve Step Variable<br>16. Thirteen Step Variable<br>17. Fourteen Step Variable | 1 |
| 17. Adjustable Rate Mortgage (ARM) Reset Date | This field applies only if the type of mortgage you held prior to your most recent application for a HAMP modification is an Adjustable Rate Mortgage (ARM) loan.<br>This field identifies the date on which the next Adjustable Rate Mortgage (ARM) reset was due to occur, as of the Data Collection Date (Field 11). | 11/1/2014 |
| 18. Next Adjustable Rate Mortgage (ARM) Reset Rate | This field identifies the rate at which your mortgage was expected to change based on when the next reset date (Field 17) is scheduled to occur. Please look to your mortgage loan documentation for information on how your mortgage's rate is recalculated at its reset date.<br>If the reset date on your ARM loan is within 120 days of the Data Collection Date, this value in this field is the expected interest rate on your mortgage at the next reset date.<br>If the reset date on your ARM loan is more than 120 days from the Data Collection Date, the value in this field is your current interest rate at the time of NPV evaluation. | 3.64 |
| 19. Unpaid Principal Balance Before Modification | This field identifies the unpaid amount of principal (money you borrowed) on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. It does not include any unpaid interest or other amounts that you may owe. | 485,159.69 |
| 20. Interest Rate Before Modification | This field identifies the interest rate on the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information on the interest rate of your mortgage. | 3.68 |
| 21. Remaining Term (# of Payment Months Remaining) | This field identifies the remaining number of months you have left to pay under the term of the mortgage for which you are applying for a HAMP modification as of the Data Collection Date. Please look to your mortgage loan documentation (including any permanent modification documentation if previously modified) for information the term of your mortgage. | 271 |

Loan Number:    45504206

| 22. Principal and Interest Payment Before Modification | This field is the amount of principal and interest you were scheduled to pay each month as of the Data Collection Date.<br>A. If your loan had an adjustable rate scheduled to reset within 120 days, this field will reflect the principal and interest payment associated with the new interest rate.<br>B. If your loan had an adjustable rate scheduled to reset after 120 days, this field will reflect the current scheduled monthly mortgage payment and the note interest rate in effect at the time of evaluation.<br>C. If your mortgage is an Interest Only loan and your loan was in the interest only period, the value in this field is the interest payment that was due each month.<br>D. If your mortgage is a negative-amortization loan, the value in this field is the greater of:<br>a. the principal and interest payment you sent on the most recent payment date; or<br>b. the minimum payment required on your loan.<br><br>If you had a prior HAMP trial period plan or HAMP permanent modification, the value in this field is the HAMP payment. | 2,503.44 |
|---|---|---|
| 23. Monthly Real Estate Taxes | This field identifies the monthly cost of your real estate taxes. If your taxes are paid annually this amount will be 1/12th of the annual cost. | 435.42 |
| 24. Monthly Hazard and Flood Insurance | This field identifies the monthly cost of your hazard and flood insurance coverage. If your insurance is paid annually this amount will be 1/12th of the annual cost. | 104.90 |
| 25. Homeowners Association Dues/Fees | This field identifies your monthly homeowner's or condominium association fee payments, if any, and/or any future monthly escrow shortages. If your homeowner's or condominium association fee payments are paid annually, this will be 1/12th of the annual cost. If your property has no association fee payments and/or any future monthly escrow shortages, this field is blank. | 0.00 |
| 26. Months Past Due | This field identifies the number of mortgage payments you would have had to make in order to make your mortgage current, as of the Data Collection Date. | 54 |
| 27. Mortgage Insurance Coverage Percent | This field identifies the percentage of private mortgage insurance coverage on the mortgage for which you are applying for a HAMP modification. If you do not have private mortgage insurance this field is blank. | 0.00 |
| 28. Capitalized UPB Amount | This field identifies the capitalized unpaid principal balance amount that includes all outstanding principal, accrued interest, escrow advances as of the data collection date. | 0.00 |
| **IV Proposed Modification Information** | | |

The fields below describe the proposed HAMP modification that was calculated by your servicer according to the HAMP program guidelines (subject to investor restrictions) that were used in your Net Present Value (NPV) evaluation.

| 29. NPV Date | This field identifies the initial date that the Net Present Value evaluation was conducted on the mortgage for which you are applying for a HAMP modification. | 10/29/2014 |
|---|---|---|
| 30. Modification Fees | This field identifies the total amount of costs and fees that would have been paid by the investor (owner) of your loan, if you had been approved for a HAMP modification. It includes expenses such as notary fees, property valuation, credit report and other required fees. | 0.00 |
| 31. Mortgage Insurance Partial Claim Amount of the Proposed HAMP Modification | This field identifies any mortgage insurance payout amount as part of the proposed HAMP modified mortgage, which is, at the discretion of your mortgage insurance company.<br>This should be zero if you were not approved for a trial period plan or permanent HAMP modification for reason of negative NPV. | 0.00 |
| 32. Unpaid Principal Balance of the Proposed HAMP Tier 1 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance on which you would have been required to pay interest if you had received a HAMP Tier 1 modification.<br>It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 36) or proposed principal forgiveness (Field 37). | 485,159.69 |
| 33. Interest Rate of the Proposed HAMP Tier 1 Modification | This field identifies the starting interest rate of the proposed HAMP Tier 1 modified mortgage. This rate is fixed for at least the first 5 years after modification. | 2.00 |
| 34. Amortization Term of the Proposed HAMP Tier 1 Modification | This field identifies the number of months left to pay the proposed HAMP Tier 1 modified mortgage. | 480 |
| 35. Principal and Interest Payment of the Proposed HAMP Tier 1 Modification | This field identifies the amount of the monthly principal and interest payment on the proposed HAMP Tier 1 modified mortgage. | 1,469.19 |
| 36. Principal Forbearance Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forbear on the proposed HAMP Tier 1 modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | 0.00 |
| 37. Principal Forgiveness Amount of the Proposed HAMP Tier 1 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 1 modified mortgage. | 0.00 |

Loan Number:   45504206

| | | |
|---|---|---|
| 38. Unpaid Principal Balance of the Proposed HAMP Tier 2 Modification (Net of Forbearance & Principal Reduction) | This field identifies the beginning principal balance [as of the Data Collection Date] on which you would have been required to pay interest if you had received a HAMP Tier 2 modification.<br>It is likely to be different than your current principal balance because it includes amounts you owe for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to your principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 43 or the amount calculated by the NPV model under the standard Tier 2 modification) or proposed principal forgiveness (Field 39). | 0.00 |
| 39. Principal Forgiveness Amount of the Proposed HAMP Tier 2 Modification | This field identifies the amount of principal your investor was willing to forgive under the proposed HAMP Tier 2 modified mortgage. | 0.00 |
| 40. Investor Override Criteria for Tier 2 Modification | This field indicates whether the owner of your mortgage provides for different terms than would be provided under the standard HAMP Tier 2 Modification. If not, the value in this field is "N". If here are terms other than the standard terms, the value in this field is "Y". | |
| 41. Interest Rate of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different interest rate than would be provided under the standard HAMP Tier 2 Modification.<br>This field identifies the interest rate of the proposed HAMP Tier 2 modified mortgage. This rate is fixed. | 0.00 |
| 42. Amortization Term of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different amortization term than would be provided under the standard HAMP Tier 2 Modification.<br>This field identifies the number of months left to pay the proposed HAMP modified mortgage. | 0 |
| 43. Principal Forbearance Amount of the Proposed HAMP Tier 2 Modification | This field only applies if the owner of your mortgage provides for a different forbearance amount than would be provided under the standard HAMP Tier 2 Modification.<br>This field identifies the amount of principal forborne on the proposed HAMP modified mortgage. You would have still owed this amount, but you would not be charged interest on it and no payments would have been due on this amount until you paid off your loan. | 0.00 |

**HOW WE USE YOUR CREDIT REPORT**

Wells Fargo Home Mortgage a division of Wells Fargo Bank, N.A. reviewed your loan for modification under the federal government's *Home Affordable Modification Program* (HAMP); we used information found in your credit report as one of the factors to determine your eligibility for this program.

To qualify for HAMP, the government requires us to calculate the net present value (NPV) for your modification. Your credit score was one of the values used in your NPV calculation to see if your loan could be modified under HAMP. We are required by law to disclose the score provided by the credit bureau that we used in this calculation.

When you review the credit score, please keep in mind that many other values in addition to the credit score when the NPV was calculated, so the final decision regarding eligibility for HAMP was not based directly on the credit score.

**About the credit score used in your NPV calculation**
The credit score we obtained in connection with your NPV calculation was provided by Equifax. Your score on  10/29/2014  was  478 out of a maximum possible score of  818. It's important to note that very few borrowers receive the maximum score.

Score range:  250-818

**What to do if you have questions about your credit score**
Please understand that Wells Fargo Home Mortgage did not calculate the credit score, nor did we develop the credit scoring model. If you'd like to request a free copy of the credit report used in the NPV calculation, please contact the credit bureau directly at the address or phone number below:

Mail:     EQUIFAX CREDIT INFORMATION SERVICES
          1550 Peachtree St.
          P.O. Box 740241
          Atlanta, GA 30374-0241
Phone:    1-800-685-1111

Website:  www.equifax.com/fcra <http://www.equifax.com/fcra>

Please be aware that Equifax was not involved in making any decisions about your request for a loan modification and cannot provide information about the NPV calculation.

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen (18) and not a party to the within action. My business address is 100 NORTH CITRUS STREET, SUITE 408, WEST COVINA, CA 91791. On March 20, 2015, I served the following document(s):

## FIRST AMENDED COMPLAINT,

On the interested parties listed below as follows:

AFRCT, LLP
Dean A. Reeves, Esq.
199 S. Los Robles Ave. Suite 600
Pasadena, CA 91101                      Attorney for Defendant Wells Fargo Bank, N.A.

☒      (BY MAIL) I deposited such envelope(s) in the mail at West Covina, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at West Covina, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒      (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the email address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☒      (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 20, 2015, at West Covina, California.

Laura Dassori
Type or Print Name                              Signature